# United States Court of Appeals
## For the First Circuit

---

No. 00-1724

MARIBEL LEBRON-TORRES, HER HUSBAND
NORBERTO VALENTIN-MERCADO, AND THEIR CONJUGAL PARTNERSHIP,

Plaintiffs, Appellants,

v.

WHITEHALL LABORATORIES,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Coffin and Campbell, Senior Circuit Judges.

---

Juan F. Matos-Bonet, with whom Javier A. Morales Ramos was
on brief for appellants.
Anita Montaner-Sevillano, with whom Maria Victoria Múnera-
Pascual and McConnell Valdés were on brief for appellee.

---

May 30. 2001

---

**CAMPBELL, Senior Circuit Judge.** Plaintiff-Appellant Maribel Lebrón-Torres ("Lebrón") brought suit against her former employer, Defendant-Appellee Whitehall Robins Laboratories ("Whitehall"), alleging disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101-12771 ("the ADA").[1] The district court allowed defendant's motion for summary judgment on the ground that Lebrón failed to proffer sufficient facts from which a reasonable jury could find that she was disabled within the meaning of the ADA. We affirm.

## I.

The summary judgment record before the district court was composed of the depositions of Lebrón, her husband, and a Whitehall supervisor, and various medical and employment records. Both parties filed their own versions of the uncontested facts. See D.P.R. Loc. R. 311.12. From these sources, we describe the relevant facts in the light most favorable to the appellant. New York State Dairy Foods, Inc. v. Northeast Dairy Compact Comm'n, 198 F.3d 1, 3 (1st Cir. 1999).

---

[1] Lebrón's husband and their conjugal partnership joined as plaintiffs. Their claims are derivative of Lebrón's own and thus for convenience we treat Lebrón as the sole plaintiff.

For nearly three years, from 1993-1996, Lebrón worked in the manufacturing department of Whitehall, a pharmaceutical manufacturing company located in Guayama, Puerto Rico.  For the first two and one half years, she worked as a manufacturing operator.  The task of a manufacturing operator required both manual and administrative work.  Lebrón had to carefully document the manufacturing process in a log book and perform tests to check the quality of the product being manufactured.  She also used heavy equipment, such as forklifts, to move and sort pallets of materials.  She sifted materials with a large screen and transported, by hand, thirty-five pound pails.  There is no dispute that Lebrón's job as a manufacturing operator required moderate but constant physical labor, such as climbing ladders, using heavy machinery, bending over, reaching above shoulder level, and lifting moderately heavy loads.

In July 1994, Lebrón first reported to Whitehall's infirmary complaining of back pain. She was treated with acupuncture.  On May 1, 1995, she returned, complaining of the same kind of back pain.  On that second time, she was given a safety belt to support her back and then she returned to work. The following day, Lebrón visited her personal physician, Dr. Murabak, for a consultation about her back pain.  Dr. Murabak ordered rest and suggested that she see the State Insurance Fund

("SIF") for treatment. On May 8, 1995, Lebrón was diagnosed by an SIF physician as suffering from cervico dorso lumbar strain. She was ordered to rest while receiving physical therapy under the auspices of the SIF.

On May 22, 1995, SIF authorized Lebrón to return to work. She did not return to the same exact duties, however, having asked for and received a transfer to the compression area of the manufacturing department, which requires less strenuous, but nonetheless physical, activity. According to Lebrón, however, she performed many of the same tasks as before. On May 31, 1995, Lebrón returned to the SIF for a check-up and was ordered to return home to rest. Thereafter, Lebrón went on leave until July 7, 1995.

Upon her return to work on July 7, 1995, neither the SIF nor Lebrón's personal physician recommended or issued her any work-related restrictions. Lebrón did continue with physical therapy, however, until August 13, 1996, when she was officially released from treatment with the SIF. On November 13, 1996, Lebrón was fired from Whitehall. Lebrón contends she was fired because she was disabled by her back injury. Whitehall contends she was fired because of her repeated violations of safety and quality protocols occurring (and documented) in April 1994, October 1995, and October 1996.

We note that from the time of her return to work on July 7, 1995, until her termination on November 13, 1996, Lebrón did not complain to her employer, Whitehall, that she suffered from back pain while at work. However, SIF medical records show that during this period she was being treated for complaints of chronic neck and back pain that restricted mobility in her arms and back, preventing her from lifting her arms above her head without some pain and sitting or bending over for long periods of time. She says that she did not have trouble walking or standing for any length of time. On January 23, 1997, the SIF notified Lebrón of an award of a twenty percent impairment of her general physiological function due to her cervico dorso lumbar strain.

Lebrón now works nearly full-time as a hair stylist, running a salon out of her home. While at Whitehall, Lebrón worked weekends and weekday evenings as a hair stylist. She is presently also the primary care-giver to her grandson. She says she requires help with household chores and avers that she still experiences chronic pain from her work-related injury, making it more difficult for her than most people to accomplish her necessary daily chores.

**II.**

The ADA prohibits discrimination in employment against qualified persons with a disability.[2] To establish a prima facie case of disability discrimination under the ADA, Lebrón must show: (1) that she suffers from a "disability" within the meaning of the Act; (2) that she was able to perform the essential functions of the job, either with or without reasonable accommodation; and (3) that the employer discharged her in whole or in part because of that disability. See Criado v. IBM Corp., 145 F.3d 437, 441 (1st Cir. 1998). Like the district court, we conclude that Lebrón's ADA case founders for failure to show that she had a disability as that term has been construed for purposes of the statute.

Not all physical impairments rise to the level of disability under the ADA. See Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 565-66 (1999). Rather, the ADA defines the term "disability" as (A) "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual," (B) "a record of such an impairment," or (C) "being regarded as having such an impairment." 42 U.S.C. §

---

[2] The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

12102(2)(A)-(C).  Lebrón asserts that she fits within prong (A) of the statute.

In contending that she qualifies for ADA protection under 42 U.S.C. § 12102(2)(A), Lebrón argues that her back injury substantially limits her major life activity of working. Whether a condition is an impairment that substantially limits one or more of an individual's major life activities is determined in a three-step analysis.  See Bragdon v. Abbott, 524 U.S. 624, 631 (1998).  First, we need to determine whether Lebrón's back injury constitutes a physical impairment.  Second, we must determine whether the life activity which Lebrón claims is affected -- working -- meets the definition of a major life activity within the ADA.  Third, tying the two statutory phrases together, we ask whether the impairment substantially limits the activity found to be a major life activity.  See id.

Read most favorably to Lebrón, her evidence satisfies the first two requirements of this analysis.  Her back condition was a physical impairment under the relevant EEOC definitions, being a "physiological disorder or condition" affecting the "musculoskeletal" system.  See 29 C.F.R. § 1630.2(h)(1).  And the activity claimed to have been impaired -- working -- has been explicitly recognized as a "major life activity" under EEOC regulations. See id. § 1630.2(i).  See Sutton v. United Air

Lines, 527 U.S. 471, 492 (1999) (assuming without deciding that working is a major life activity but noting the "conceptual difficulty in defining 'major life activities' to include work, for it seems to argue in a circle"); Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999) (describing working as a major life activity for purposes of the ADA). See also Colwell v. Suffolk County Police Dept., 158 F.3d 635, 642 (2d Cir. 1998), cert. denied, 526 U.S. 1018 (1999) (activities listed in EEOC regulations are treated as major life activities per se, rather than as major life activities only to the extent that they are shown to affect a particular ADA plaintiff).

Where Lebrón's claim falters is at the third and final step of the analysis: she has not shown that her back impairment substantially limits her ability to work. In order to prove such a limitation, Lebrón is required to demonstrate that her back injury has precluded her from a substantial class of jobs or a broad range of jobs. See Sutton, 527 U.S. at 491-92; Santiago Clemente v. Executive Airlines, Inc., 213 F.3d 25, 33-34 (1st Cir. 2000). Even "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.3(j)(3)(I). "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not

precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." Sutton, 527 U.S. at 492.

Here, specific evidence is not only completely lacking as to Lebrón's inability to perform a class of jobs or broad range of jobs in various classes, but the evidence fails even to show that Lebrón could not perform the specific jobs she has held. The record indicates that Lebrón performed her employment at Whitehall without restriction for more than a year after she returned from the medical leave imposed by the SIF. While she was being treated at this time for back pain, she never told her employer she could not perform her job and the evidence does not otherwise demonstrate that her back condition actually prevented her from performing her work at Whitehall. Moreover, since leaving Whitehall, she has been working nearly full-time at home as a hair stylist, a previous occupation, as well as acting as her grandson's primary care-giver.

To prevail at summary judgment, Lebrón would have had to offer some evidence from which a reasonable jury could find that she is significantly restricted in her ability to perform a class of jobs or a broad range of jobs in various classes, an evidentiary burden the EEOC regulations delineate, see 29 C.F.R. § 1630.2(j)(3)(i), and the Supreme Court has recently confirmed

is required, see Sutton, 527 U.S. at 492.  Such evidence is often proffered in the form of expert vocational testimony, although expert testimony is not necessarily required.  See Duncan v. Washington Metro. Area Transit Auth., 240 F.3d 1110, 1116-17 (D.C. Cir. 2001) ("[T]he evidentiary burden [of proffering testimony or data on the class of jobs or range of jobs from which the plaintiff is disqualified] . . . is not onerous.  [Plaintiff] need not necessarily produce expert vocational testimony, although such evidence might be very persuasive.  In the proper case simple government job statistics may suffice."); Mullins v. Cromwell, 228 F.3d 1305, 1314 n.18 (11th Cir. 2000) ("[E]xpert vocational evidence, although instructive, is not necessary to establish that a person is substantially limited in the major life activity of working. Furthermore, a plaintiff could testify from his or her own extensive job search whether other jobs that he or she could perform were available in the geographical area.").

Lebrón's failure to proffer any evidence specifying the kinds of jobs that her back condition prevented her from performing dooms her ADA claim.  See Webb v. Clyde L. Choate Mental Health & Dev. Ctr., 230 F.3d 991, 997 (7th Cir. 2000) (upholding summary judgment against psychologist suffering from severe asthma, osteoporosis, and a weakened immune system

-11-

because he "ha[d] not presented evidence that his condition prevents him from performing a class of jobs"); <u>Taylor</u> v. <u>Nimock's Oil Co.</u>, 214 F.3d 957, 961 (8th Cir. 2000) (concluding that former cashier required to work 40 hours per week and who could not lift more than 10 pounds did not establish disability because she "presented no evidence to create a genuine issue of material fact about whether she could perform a class of jobs with her restrictions"); <u>Santiago Clemente</u>, 213 F.3d at 32-33 (upholding summary judgment for employer because former flight attendant failed to show that temporary hearing loss was disability under ADA because she offered "no evidence of how many jobs call for this ability, or that she was precluded from any class of jobs"). Without some evidence as to the kinds of jobs from which she is disqualified, a jury would not be able "to perform the careful analysis that is necessary to determine that [Lebrón] was substantially limited in her ability to work." <u>Colwell</u>, 158 F.3d at 645.

Indeed, not only did Lebrón not proffer evidence as to the kinds of jobs her back injury prevented her from performing, the record, as said, is insufficient to show that her physical condition at the time of her discharge rendered her unable to perform the two types of work she had been performing, namely, her former job at Whitehall and her work as a hair stylist. As

to the Whitehall job, she offered no explicit evidence from which it can be deduced that she was physically incapable of doing what was required during the more than a year after she returned from the medical leave imposed by the SIF. She did not, during this period, seek an accommodation from her employer nor conduct herself otherwise so as to evidence physical incapacity. As to hair styling, Lebrón asserted in her deposition that her physical impairment prevents her from "performing as she used to when she worked" as a hair stylist before she injured her back. Yet the fact remains that she continues to work out of her home nearly full-time as a hair stylist.

Hence, on this record, we think that no juror could reasonably find that Lebrón was so precluded by her impairment from a class of jobs or a broad range of jobs in various classes as to be substantially limited in the major activity of working. Lebrón has not presented evidence sufficient to create a triable issue as to whether or not she is disabled within the meaning of the ADA.

To be sure, Lebrón presented evidence of an SIF finding of a twenty percent disability during her medical leave from Whitehall that was issued in January 1997 for which she was compensated $5,850. She also presented medical records

indicating on-going treatment for physical limitations and pain at various times while she was employed by Whitehall. But while this evidence is suggestive of possible disability, it is insufficient by itself to establish that she was substantially limited in the performance of a class of jobs or a broad range of jobs in various classes. It was Lebrón's responsibility as the party with the evidentiary burden to provide evidence tying her back condition into an inability to work at relevant jobs. That she was injured and experienced back pain is not enough to meet that evidentiary burden where it remains speculative whether and to what degree her condition renders her unsuited to work at particular jobs which would, in aggregate, constitute a major life activity.

As there is insufficient evidence of the existence of a disability, we need not reach Lebrón's claim of failure to accommodate for which the finding of a disability as defined in the ADA is a prerequisite.

**Affirmed**.