Carmen DAVILA Plaintiffs

v.

**HILTON INTERNATIONAL OF PUERTO RICO, INC., et al. Defendants**

Civil No. 99–2070(SEC).

United States District Court, D. Puerto Rico.

Sept. 28, 2001.

Jane A. Becker–Whitaker, San Juan, PR, for Plaintiffs.

Graciela J. Belaval–Bruno, Francisco M. Ramirez–Rivera, Nartunez Odell & Calabria, San Juan, PR, for Defendants.

**OPINION AND ORDER**

CASELLAS, District Judge.

Pending is Defendant Hilton International of Puerto Rico, Inc.'s ("Defendant") motion for summary judgment **(Docket # 37)**, and an opposition filed by Plaintiff Carmen Davila ("Plaintiff") **(Docket # 42)**. After reviewing the parties' arguments and the applicable law, Defendant's motion is **GRANTED.**

**Factual Background**

Plaintiff filed the above-captioned suit against Defendant for employment discrimination under the provisions of Section 107(a) of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12117, which incorporates by reference Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5; and the Family and Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"). In addition, Plaintiff invokes the Court's supplemental jurisdiction by raising claims under the laws of the Commonwealth of Puerto Rico. Specifically, the following local laws are implicated: Law 44 of July 2, 1985, 1 P.R. Laws Ann. § 501 ("Law 44"); and Law 80 of May 30, 1976, as amended, 29 P.R. Laws Ann. § 185(a) ("Law 80").

Plaintiff Carmen Davila has a ninth grade education (Docket # 42, Ex. 18 at p. 8), and is not fluent in English (Docket # 42, Ex. 19 at p. 9). Plaintiff began her employment for Defendant in February of 1965, as a "locker attendant" for Defendant's Beach and Pool Department. (Docket # 1, ¶ 9). She continued her duties as a locker attendant for approximately five years, at which time she was promoted to the position of "control guard cashier" within the Department, where she continued working until October 15, 1998. (Docket # 1, ¶ 10). On that day, Plaintiff was summoned to the Human Resources Department, where she was informed that

Defendant would no longer be needing a control guard cashier. (Docket # 37, Ex. 6). Therefore, based on her seniority, Plaintiff was given the option of either being reassigned to the position of "beach and pool person" or being laid off. (Docket # 37, Ex. 8 at p. 27).

In response to Defendant's alternatives, Plaintiff stated that she could not perform the duties of the beach and pool person because of its physical demands: including pushing towel carts, lifting chairs and dumping trash bags. (Docket # 37, Ex. 20 at p. 35). In addition, Plaintiff claimed that she could not lift or carry heavy objects because she slipped and fell on the floor of the hotel in 1996, injuring her lower back. (Docket # 37, Ex. 30 (English Translation at Docket # 50)). As proof of her inability to perform the beach and pool person job, Plaintiff points to her referral to the State Insurance Fund of Puerto Rico ("SIF"), where she received a diagnosis and treatment for her injuries. On October 26, 1998, the SIF sent Defendant a letter concerning Plaintiff's condition, which stated:

> Carmen Davila–Figueroa, a control cashier at the Caribe Hilton, has been receiving treatment since February 29, 1998 for "lumbosacral strain, sprained left knee, degenerative joint disease facet joints L5–S1."
>
> On October 23, 1998, we met to inform the injured party of her physical limitation for performing her customary job. The last physiatric examination revealed para-lumbar muscular spasms with pain upon palpitation which limit her ability to lift and move weights over 20 pounds (occasional).
>
> It is recommended that the job duties be adjusted to this restriction.

(Docket # 37, Ex. 30 (English Translation at Docket # 50)). Because Plaintiff refused the reassignment, she was "temporarily suspended from employment and pay (laid-off)." (Docket # 1, ¶ 18).

Plaintiff alleges in the complaint that she was subjected to unlawful discrimination, because she was laid-off and not accommodated by Defendant in October of 1998. In support of this argument, Plaintiff alleges that: (1) as a "beach and pool person" she could have been sub-classified and allowed to carry out the functions of other duties performed by the workers at that position, which did not entail carrying or lifting, such as cleaning the lockers, gymnasium, courts etc; (2) she was not accommodated at any position, and in November of 1998, all of Defendant's beach and pool employees were recalled except Plaintiff; (3) her position as a control guard cashier was available and given as a promotion to a beach and pool person with less seniority; and (4) Defendant knew of her physical limitations and purposefully assigned her to the position that entailed lifting and carrying in order to "get rid" of her due to her disability.

In response to Plaintiff's allegations of discrimination, Defendant makes several arguments. First, Defendant argues that Plaintiff is not a qualified individual under the ADA because she could not perform the essential functions of the beach and pool person position with or without a reasonable accommodation. Second, Defendant alleges that Plaintiff is not disabled under the ADA. Third, Defendant claims that Plaintiff's sole accommodation request of only performing lighter duties of the beach and pool person classification and not all of the positions essential functions was not reasonable under the ADA. Finally, Defendant claims that Plaintiff's FMLA claim is without merit.

**Summary Judgment Standard**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim … is asserted … may, at any time, move with or with-

out supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Charles A. Wright, Aurthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419.

"Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón*, 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, [and] no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case," *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1984); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mutual Life Assurance Company of America*, 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form sufficient to limn a trialworthy issue … Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with conse-

quence."); *Medina Muñoz,* 896 F.2d at 8,*(quoting Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989)) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

**Applicable Law/Analysis**

The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. §§ 12101, *et seq.,* prohibits discrimination against qualified individuals with disabilities. To set forth a *prima facie* case of discrimination under the ADA, the Plaintiff must show: (1) that she suffers from a "disability" within the meaning of the Act; (2) that she was able to perform the essential functions of the job, either with or without reasonable accommodation; and (3) that the employer discharged her in whole or in part because of the disability. *See Lebron–Torres v. Whitehall Laboratories,* 251 F.3d 236, 239 (1st Cir.2001); *Criado v. IBM Corp.,* 145 F.3d 437, 441 (1st Cir.1998). In this case, the Court concludes that Plaintiff has failed to show that she had a disability as the term has been interpreted for the purposes of the ADA.

"Not all physical impairments rise to the level of disability under the ADA." *Lebron–Torres,* 251 F.3d at 239. Instead, the ADA defines the term disability as: (A) "a physical or mental impairment that substantially limits one or more of the major life activities of [an] ... individual," (B) "a record of such an impairment," or (C) "being regarded as having such an impairment." 42 U.S.C.A. § 12102(2)(A)-(C). Plaintiff claims that she falls within category (A) of section 12102(2).

■ In making the argument that she qualifies for protection under the ADA, Plaintiff contends that her lifting restriction substantially limits her in the major life activity of working. In determining whether a condition is an impairment that substantially limits an individual's major life activity, the Court performs a three-part test. *Lebron–Torres,* 251 F.3d at 239; *see also Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). First, the Court must determine whether Plaintiff's back impairment constitutes a physical impairment under the Act. Second, the Court must decide whether the life activity which Plaintiff claims is affected-working meets the definition of a major life activity within the ADA. Finally, combining these statutory phrases, the Court asks whether the impairment substantially limits the activity found to be a major life activity. *See Lebron–Torres,* 251 F.3d at 239–40.

■ Interpreting the facts most favorably to Plaintiff, the evidence establishes the first two elements of the analysis. First, her back condition, para-lumbar muscular spasms with pain upon palpitation, is a "physiological disorder or condition" affecting the "musculoskeletal" system. *See* 29 C.F.R. § 1630.2(h)(1). Moreover, the activity claimed to be impaired-working-has been recognized as a "major life activity" under the applicable EEOC regulations. *See id.; see also Gelabert–Ladenheim v. American Airlines, Inc.,* 252 F.3d 54, 58 (1st Cir.2001); *Lebron–Torres,* 251 F.3d at 240; *Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, 9 (1st Cir.1999).

Where Plaintiff has failed to meet her burden is at the third stage of the Court's analysis: she has not shown that her back condition and lifting restriction substantially limits her ability to work. In meeting this burden, "[a]n ADA claimant assumes a more fact-specific burden of proof in attempting to demonstrate that her impairment 'substantially limits' the major life activity of 'working.'" *Quint,* 172 F.3d

at 11. As such, the issue of whether "the plaintiff's impairment substantially limits the major life activity of working involves a multi-level analysis, starting with the skills of the plaintiff herself and moving to the nature of the jobs she was prevented from performing as well as those she was not." *Gelabert–Ladenheim,* 252 F.3d at 59.

The first level of the Court's analysis is an "individualized inquiry" focusing upon the characteristics of the plaintiff. Relevant considerations are the plaintiff's education level, training, job skills, expertise, and knowledge. The ultimate inquiry is "what plaintiff's past and/or present work experience tells us about her current skills and abilities in the workplace, as compared with the average person having comparable training, skills and abilities." *Id.,* (*quoting* 29 C.F.R. § 1630.2(j)(3)(j)). Next, the Court focuses upon the jobs and the relevant job market: *i.e.* the job plaintiff had, the jobs closed to plaintiff, and the jobs open to plaintiff within the reasonably accessible geographic area. *Gelabert–Ladenheim,* 252 F.3d at 59. In this analysis, "the requirement is only that the otherwise qualified plaintiff be 'substantially limited' in the major life activity of working." *Id.* at 60. The EEOC regulations provide further guidance on the "substantially limited" analysis:

(1) "[t]he inability to perform a single, particular job" does not constitute the required substantial limitation, 29 C.F.R. § 1630.2(j)(3)(i);

(2) the plaintiff must show that she is significantly restricted in her ability to perform "a class of jobs"—that is, the job from which she is disqualified by reason of her impairment and those which utilize similar knowledge, training,

skills or abilities, id. § 1630.2(j)(3)(ii)(B); and/or

(3) the plaintiff must show that she is significantly restricted in her ability to perform "a broad range of jobs in various classes"—that is, the job from which she is disqualified by reason of her impairment and those which do not utilize similar knowledge, training, skills or abilities, id. § 1630.2(j)(3)(ii)(C).

*Id.*

In meeting the burden of showing a disqualification from a class of jobs or a broad range of jobs in various classes, the plaintiff may proceed in several manners. In some cases, it is often helpful, but not required, for a plaintiff to seek the advice of a vocational expert. *See Gelabert–Ladenheim,* 252 F.3d at 60. While in other cases the seriousness of plaintiff's impairment is so obvious that no additional evidence will be required. *See EEOC v. Rockwell Int'l Corp.,* 243 F.3d 1012, 1019–20 (7th Cir.2001). Finally, the plaintiff may make reference to publicly available labor market statistics, like simple government job statistics. *See Duncan v. Washington Metro. Area Transit Auth.,* 240 F.3d 1110, 1118 (D.C.Cir.2001).

Applying this framework to the facts of this case, it is the Court's opinion that no reasonable jury could find that Plaintiff was disabled. The evidence Plaintiff uses to support her contention that she is impaired in the major life activity of working is: (1) the SIF finding of para-lumbar muscular spasms with pain upon palpitation, which limit her ability to lift and move weights over 20 pounds, and (2) the Declaration of Madeline Figueroa, an "expert"[1] in Human Resources. (Docket # 42, Ex. 21). The Declaration states:

---

**1.** Although the Court will discuss the substance of Figueroa's Declaration, we agree with Defendant that it is doubtful that Figuer-

oa's statement would be admissible under Fed.R.Evid. 702. First, Ms. Figueroa has a masters degree in psychology, not human re-

UNSWORN STATEMENT UNDER PENALTY OF PERJURY

I, Madeline Figueroa, MA, of legal age, single, senior human resources and administrative consultant, and resident of Trujillo Alto, make the following unsworn statement under penalty of perjury:

1. I have a bachelor's degree and a masters in psychology.

2. I have worked in the field of human resources in Puerto Rico since 1985.

3. My work has provided me with extensive knowledge of the employment market in Puerto Rico.

4. Based on my experience, I can aver that a person whose 33 years of experience in the labor market are limited to manual labor is most likely to be successful in securing employment in the field of manual labor. This is true because the most important selling point for prospective employers is the prospective employee's experience.

5. The market looks primarily to the prospective employee's work experience. A person whose work experience is limited to manual labor in Puerto Rico will be severely limited in his or her capacity to obtain employment in a different field is very limited, to the point of being virtually nil.

6. Almost all employers in Puerto Rico who seek employees to work as cashiers or in any capacity in a department store require that the employee have a high school degree.

7. The biggest employers in Puerto Rico in the market of department stores are employers from the continental United States, such as Sears, Walmart, J.C. Penney, and other large chains. Such employers tend to be even more demanding than employers from the Island and ask that in addition to a high school degree that the employee be able to speak English or have some prior experience in a department store.

8. Employers in the Puerto Rico market look primarily at a prospective employee's experience. Even if the lack of high school would be tolerated, which is doubtful, the lack of experience in the field would exclude a candidate from consideration.

9. Employers in the Puerto Rico market are concerned about a prospective employee's experience because that very experience gives the employer the security that the employee will perform the job in a satisfactory manner.

10. In conclusion, a person with 33 years of experience cleaning, handing out towels, and checking membership cards at a hotel with a ninth grade education with the physical impediment of not being able to lift or carry more than 20 pounds except occasionally would be virtually unemployable in Puerto Rico. (Docket # 42, Ex. 21).

As we noted above, Plaintiff was not under a duty to summon the evidence of a vocational expert. However, since Plaintiff has elected this route in showing a disqualification from a class of jobs or a

---

sources or economics. Therefore, her bare assertion that she has experience in the employment market in Puerto Rico lacks the proper foundation. Second, her statement does not discuss any "scientific, technical or other specialized knowledge" since no statisti- cal evidence has been produced. Finally, the declaration does not appear to rest on a reasonable foundation, nor is it relevant to the facts of this case. *See Vadala v. Teledyne Indus. Inc.*, 44 F.3d 36, 39 (1st Cir.1995).

broad range of jobs in various classes, the Court must determine whether the evidence raises a triable issue with regard to Plaintiff's disability. In making this determination the Court must keep in mind the First Circuit's ruling in *Quint,* 172 F.3d at 12:

> ... the burden of proof incumbent upon an ADA plaintiff in relation to this element [is not] particularly formidable. See 29 C.F.R. Pt. 1630, App. § 1630.2(j) ("The terms 'numbers and types of jobs' and 'number and types of other jobs,' as used in the factors discussed above, are not intended to require an onerous evidentiary showing. Rather, the terms only require the presentation of evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., 'few,' 'many,' 'most') from which an individual would be excluded because of an impairment.")

█ The Court will now explain why Plaintiff's evidence fails to meet her burden under the ADA in "working" cases. First, the Court holds that a lifting restriction alone is not sufficient to establish a substantial impairment to the major life activity of working. *See Thompson v. Holy Family Hosp.,* 121 F.3d 537, 541 (9th Cir.1997); *Williams v. Channel Master Satellite Sys.,* 101 F.3d 346, 349 (4th Cir. 1996) (Holding as a matter of law that a 25–pound lifting limitation does not constitute a disability); *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1319 (8th Cir.1996). Other courts have held that even lesser amounts were not substantial limitations. *See Marinelli v. City of Erie, Pa.,* 216 F.3d 354, 364 (3rd Cir. 2000) (10 pounds); *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 644 (2nd Cir.1998) (10–20 pounds); *Helfter v. United Parcel Service, Inc.,* 115 F.3d 613,

617–18 (8th Cir.1997) (10–20 pounds); *McKay v. Toyota Motor Mfg., US.A., Inc.,* 110 F.3d 369, 373 (6th Cir.1997) (20 pounds); *Wooten v. Farmland Foods,* 58 F.3d 382, 384–86 (8th Cir.1995) (10–20 pounds); *Piascyk v. City of New Haven,* 64 F.Supp.2d 19, 29–31 (D.Conn.1999) *(15* pounds), *aff'd* 216 F.3d 1072 (2nd Cir.2000) (Table case); *Gerdes v. Swift–Eckrich,* 949 F.Supp. 1386, 1400 n. 5 (N.D.Jowa 1996) (10 pounds) *aff'd* 125 F.3d 634 (8th Cir. 1997).

Recognizing that a lifting restriction alone would not suffice, Plaintiff has offered Figueroa's declaration, which the Court finds contains only bald assertions and conclusory statements, and fails to meet Plaintiff's specific burden of production in ADA "working" cases. The first obstacle that the Figueroa declaration faces is it conclusion: that Plaintiff is "virtually unemployable" in the manual labor field. This conclusion is made with casual disregard for statements by Plaintiff that she performed her employment at Hilton as a Control Guard without regard to her condition (Docket # 37, Ex. 4 at p. 24), and that Plaintiff admitted she could perform, despite her physical disability, the cleaning activities associated with her position (Docket # 37, Ex. 20 at p. 35, Ex. 21 at p. 33), and the fact that she is fully capable of working as a receptionist (Docket # 37, Ex. 40 at p. 51, Ex. 41 at p. 52). Second, Figueroa's declaration is deficient because it is completely devoid of evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., "few," "many," "most") from which Plaintiff would be excluded an individual would be excluded because of her impairment. Third, it was incumbent upon Plaintiff to provide evidence of the number and types of jobs she can and cannot perform in the relevant labor market. The Figueroa declaration has no such evidence. The final hurdle that Figueroa's declara-

tion fails to clear is that it does not link Plaintiff's alleged limitation-the inability to lift and carry more than twenty pounds occasionally with the conclusion that Plaintiff is "virtually unemployable in Puerto Rico." It seems that Figueroa bases her conclusion solely on Plaintiff experience and education, while disregarding Plaintiff's physical condition. In fact, there is no reference to Plaintiff's limitations or an explanation as to how Plaintiff's limitations keep her from working.

In short, by providing nothing more than bald assertions and conclusory statements Plaintiff has failed to meet her evidentiary burden of proving she is "disabled" under the ADA. *See Gelabert–Ladenheim*, 252 F.3d at 62. Therefore, Defendant's motion to dismiss is **GRANTED**, and Plaintiff's claim under the ADA is **DISMISSED WITH PREJUDICE.**

### The FMLA Claim

 The Family and Medical Leave Act provides employees with a 12 week unpaid leave during any 12 month period for one or more of the following: (a) the birth of a son or daughter of the employee and in order to care for such son or daughter, (b) placement of a son or daughter with the employee for adoption or foster care, (c) in order to care for the spouse, ora son, daughter, or parent of the employee with a serious health condition, (d) because of a serious health condition of the employee that makes him unable to perform the functions of the position. 29 U.S.C. § 2612(a)(1)(A)-(D). At no time during her employment did Plaintiff request any type of leave under the FMLA, as required by 29 U.S.C. § 2612(e)(2) and § 2613 (Docket # 37, Ex. 38 at p. 54, Ex. 39 at p. 55). Instead, the leave requested by Plaintiff was to make repairs to her home resulting from Hurricane Georges. Thus, Plaintiff's claim under the FMLA is **DISMISSED WITH PREJUDICE.**

### Plaintiff's Supplemental Claims

 As to the pending pendent jurisdiction claims in the present case, it is hornbook law that a district court has discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. See 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Nevertheless, where, as here, all federal claims warrant dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction.

It has been stated that the holding in Gibbs "seems to clearly require dismissal without action on the merits and without any exercise of discretion if all the federal claims ... are found to be short of trial, deficient." *Snowden v. Millinocket Regional Hosp.*, 727 F.Supp. 701, 709 (D.Me. 1990). Such a result is warranted in view that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the law suit." *Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir.1991).

Although District Courts are not obliged to dismiss pendent state law claims, in the usual case in which all federal law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness and comity-will point toward declining to exercise jurisdiction over the remaining state law claims. In such a case, state-law claims should be dismissed. *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 5, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *citing Gibbs*, 383 U.S. at 726–27, 86 S.Ct. 1130; *see also Mercado–Garcia v. Ponce Federal Bank*, 979 F.2d 890, 896 (1st Cir.1992); *Rivera v.*

*Murphy,* 979 F.2d 259, 264 (1st Cir.1992); *Figueroa Ruiz v. Alegria,* 896 F.2d 645 (1st Cir.1990); cf. *Vega v. Kodak Caribbean,* 3 F.3d 476, 478 (1st Cir.1993) (holding that "when the district court disposed of the ADEA claims, the pendent claims became subject to dismissal for want of subject matter jurisdiction"); *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 47 (1st Cir.1991) (stating that "since federal question jurisdiction hinged on that [dismissed] count, and there was no complete diversity of citizenship or other cognizable basis for the assertion of subject matter jurisdiction in the district court, the pendent state law claims were properly dismissed under the rule of *United Mine Workers v. Gibbs* ").

█ Supplemental jurisdiction should be declined in this case in view that the state law claims substantially predominate over the federal claims. The Supreme Court has held that judicial economy, convenience, fairness and comity favors "a decision to relinquish jurisdiction when state issues predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought." *Carnegie–Mellon,* 484 U.S. at 350 n. 5, 108 S.Ct. 614, citing *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130. Since Plaintiff is not entitled to any award under the ADA or the FMLA, the only award Plaintiff could, in any event, pursue would be under the commonwealth statutes. Therefore, Plaintiff's claims under Law 44 of July 2, 1985, 1 Laws P.R. Ann. § 501 ("Law 44"); and Law 80 of May 30, 1976, as amended, 29 Laws P.R. Ann. § 185(a) ("Law 80") are **DISMISSED WITHOUT PREJUDICE.** **Judgment will be entered accordingly.**

**SO ORDERED.**