**John M. TEBO, Plaintiff,**

v.

**John E. POTTER, Postmaster General, United States Postal Service, Defendant.**

**No. CIV.A. 01–40138–NMG.**

United States District Court,
D. Massachusetts.

Nov. 8, 2004.

Mary Elizabeth Carmody, U.S. Attorneys Office, Worcester, MA, for William J. Henderson, John E. Potter, Defendants.

Rayford A. Farquhar, United States Attorney's Office, Boston, for John E. Potter, Defendant.

Ilene Titus, Attorney at law, Worcester, MA, for John M. Tebo, Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

On July 26, 2001, Plaintiff John M. Tebo ("Tebo") brought this disability discrimination action against his employer, John E. Potter, Postmaster General of the United States Postal Service ("USPS"). Tebo alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 et seq., and the Rehabilitation Act, 29 U.S.C. § 794. Tebo's complaint alleges that USPS failed to provide a reasonable accommodation for his disability (Count 1), created a hostile work environment (Count II) and retaliated against him after he filed an Equal Employment Opportunity ("EEO") claim (Count III).

## I. *Background*

### A. *Factual Background*

The following facts are set forth as alleged in the complaint, plaintiff's Local Rule 56.1 Statement of Material Facts and the memoranda supporting and opposing defendant's motion for summary judgment. Because this matter is before the Court on defendant's motion for summary judgment, facts will be viewed in the light most favorable to the plaintiff. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993).

Tebo has worked for USPS in some capacity since December 31, 1988. He was originally hired as a part time Rural Carrier Relief for the Westborough Post Office. In September, 1993, Tebo began working full time as a Rural Carrier, a position involving the delivery of mail by truck on a regular route. Tebo worked for USPS in that position until May, 1999, after which time his attendance at work became sporadic.

Plaintiff has suffered from a nervous condition his entire life. In the fall of 1998, he began experiencing symptoms of stress and possible cardiac problems and was out of work due to those symptoms on numerous days. In the following months his symptoms included agoraphobia, anxiety disorder, breakdowns, depression, difficulty managing anger, increased heart rate, insomnia, obsessive compulsive disorder, panic attacks lasting a few hours to a few days, shortness of breath, "stress caused by problems with co-workers and abusive treatment by his supervisor," and on some days he was barely able to get up in the morning and unable to do chores at home. Tebo received counseling and psychotherapeutic treatment and has taken medication for some or all of those problems. His doctors consider his symptoms to be related to a non-work related disability. In June, 1999, plaintiff's doctor, Dr. Celona, advised Tebo not to drive because the medication he was taking for his anxiety disorder had a sedative effect. In September, 1999, Dr. Celona recommended that Tebo work in a more structured environment, e.g. indoors.

Postal employment is governed by the Collective Bargaining Agreements ("CBAs") of various unions. In 1999 Tebo was a member of the Rural Letter Carriers ("RLC") craft within the National Rural Letter Carriers Association ("the NRLCA"). Other relevant unions include the American Postal Workers Union, the National Association of Letter Carriers and the National Postal Mail Handlers Union (together, "the three major unions"). In 1978, the USPS entered into a CBA with the three major unions which contained a provision for light duty work for illnesses or injuries sustained while off the

job. The agreement provided that the three major unions could assign employees to one of the other two member unions (via a so-called "cross-craft agreement") for light duty work in certain circumstances. The NRLCA was not part of that agreement and to this day does not have a cross-craft agreement.

"Light duty work" is to be distinguished from "limited duty work." Light duty refers to work provided to employees who have sustained a non work-related injury that prevents them from carrying out their work. Limited duty work, on the other hand, is available only for employees who have incurred a work-related disability. Because Tebo's disability was not work related, he was ineligible for limited duty work. Furthermore, according to the USPS, the RLC craft is the only craft in the USPS that does not have a provision for light duty work. Therefore, in order for Tebo to be assigned light duty work, he would have to be transferred to another craft, which USPS has determined would violate the CBA of the RLC.

On August 31, 1999, Tebo informed his shop steward that he would like to leave RLC and change crafts. He was not immediately transferred to another craft because, according to the USPS, to have done so would have violated various CBAs unless no one in the craft to which the available position belonged bid for the position.

During the fall of 1999, Tebo, still employed as a RLC, was given indoor work consistent with the RLC craft and was assigned tasks such as assisting with the rural mail count and casing mail on rural routes with heavy volume on an intermittent basis. Since the fall of 1999, Tebo has continued to seek work in a craft other than RLC.

On December 7, 2000, Tebo was offered a position as a Mail Handler in the Fram-ingham Post Office, a position in a craft other than RLC. He accepted that position and has been working full time in it since December 16, 2000. The USPS authorities state that, because no one within the Mail Handler craft bid on the position, plaintiff's transfer did not violate any CBA.

### B. *Procedural History*

On November 19, 2001, defendant filed a motion to dismiss Tebo's complaint pursuant to Fed.R.Civ.P. 12(b)(6) or, alternatively, for summary judgment pursuant to Fed.R.Civ.P. 56(b). This Court, "mindful of the individualized inquiry required by the ADA and the general allegations made by Tebo about the impact of his disability," denied that motion on September 12, 2002.

On October 4, 2002, defendant filed a motion for reconsideration of the Court's September 12, 2002 Order. That motion requested that this Court reconsider its previous Order because the Court had not addressed the allegation that the plaintiff could not establish the second essential element of his claim because he had admitted that he could not perform the essential functions of his job, a rural mail carrier, either with or without accommodation. The Court reconsidered the motion but held that, absent further discovery, Tebo's allegations stated a claim for relief and defendant's motion to dismiss or for summary judgment would, therefore, once again be denied.

Potter filed the instant motion for summary judgment on March 14, 2004. Because the parties have undergone discovery and have presented factual evidence to the Court to substantiate their arguments, the Court now finds that summary judgment in favor of defendant is warranted.

## II. *Motions for Leave to File a Response*

Defendant filed a motion for leave of Court to file a reply memorandum in further support of his motion for summary judgment on May 10, 2004. Plaintiff filed a motion for leave to file a response to defendant's reply memorandum on May 21, 2004. Both motions will be allowed and the Court will consider the arguments raised in the accompanying memoranda.

## III. *Summary Judgment*

### A. *Standard of Review*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. *Failure to Accommodate*

The ADA prohibits covered employers from discriminating against a qualified individual with a disability. 42 U.S.C. § 12112(a). The United States, however, is not a "covered employer" under the ADA. 42 U.S.C. § 12111(5)(B)(i); *see also Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 11 n. 1 (1st Cir.2004). This opinion will, therefore, focus on plaintiff's claims under the analogous Rehabilitation Act, which applies the same standards as the ADA. *See id.*; 29 C.F.R. § 1614.203(b).

The Rehabilitation Act prohibits the USPS from discriminating against a qualified individual with a disability. 29 U.S.C. § 794(a). To succeed on his claim for failure to accommodate under the Rehabilitation Act, plaintiff must show 1) that he suffered from a disability within the meaning of the statute, 2) that he was a qualified individual in that he was able to perform the essential functions of his job, with or without reasonable accommodation, and 3) that, despite his employer's knowledge of his disability, the employer did not offer a reasonable accommodation for the disability. *Calero–Cerezo*, 355 F.3d at 20.

For purposes of the ADA and the Rehabilitation Act, a disability is a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment or being regarded as having such an im-

pairment. 42 U.S.C. § 12102(2). The analysis of whether an individual has a disability within the meaning of the statute is based upon three questions: 1) whether the individual suffered a physical or mental impairment, 2) whether the life activity limited by the impairment qualifies as *major* and 3) whether the impairment *substantially* limited the identified major life activity. *Calero–Cerezo*, 355 F.3d at 20. The plaintiff has the burden of proving these three elements. *Id.* Here, plaintiff arguably satisfies the first two prongs but fails with respect to the third.

An emotional or mental illness qualifies as a physical or mental impairment. 29 C.F.R. § 1630.2(h)(2). The First Circuit has recognized that major depression can qualify as a mental impairment within the meaning of the Rehabilitation Act. *Calero–Cerezo*, 355 F.3d at 20. Tebo's depression was severe and continuing, and it qualifies as a mental impairment. Tebo's other medical problems, such as his anxiety and panic disorder, further support his claim that his mental illness was severe enough to qualify as a mental impairment under the Rehabilitation Act. *See Rocafort v. IBM Corp.*, 334 F.3d 115 (1st Cir.2003) (assuming without deciding that panic and anxiety disorder is a qualifying mental impairment under the ADA). The record contains ample evidence, including diagnoses from doctors, information regarding medications, absences from work and hospitalization, from which a factfinder could conclude that plaintiff was, in fact, suffering from major depression and other mental illnesses during the relevant period.

A "major life activity" under the Rehabilitation Act is an "activity of central importance to people's daily lives." *Calero–Cerezo*, 355 F.3d at 21. Congress did not intend that "everyone with a physical impairment that precluded the performance of some isolated, unimportant, or particu-

larly difficult manual task" would qualify as disabled. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

Tebo claims that his mental impairment limits the major life activity of working. Neither the Supreme Court nor the First Circuit Court of Appeals has expressly held that working does or does not qualify as a major life activity, preferring instead to assume without deciding that it can qualify. *See Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 200, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) ("Because of the conceptual difficulties inherent in the argument that working could be a major life activity, we have been hesitant to hold as much, and we need not decide this difficult question today."); *Sullivan v. Neiman Marcus Group, Inc.*, 358 F.3d 110, 115 (1st Cir.2004) ("We will, as we have done in the past, assume without deciding that work may constitute a major life activity."). This Court will follow suit and assume for purposes of the instant motion that working can be a major life activity under the Rehabilitation Act.

■ Tebo also claims that his disability limits the major life activity of driving. Dr. Celona stated that Tebo could not operate a motor vehicle because he was taking the medication Alprazolam. Although plaintiff's disability does not directly cause his inability to drive, his inability to drive is a side effect of the medication he takes for his disability, and such side effects may be considered when determining whether an individual is disabled. *Sutton*, 527 U.S. at 484, 119 S.Ct. 2139. Plaintiff has not identified any First Circuit precedent that holds that driving is itself a major life activity and it is not clear whether the First Circuit Court of Appeals would so hold. *See Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir.1998) (stating that driving is not a

major life activity under the ADA); *Aceve-do Lopez v. Police Dep't,* 81 F.Supp.2d 293, 297 (D.P.R.1999) ("driving is not a sufficiently significant or essential function to qualify as a major life activity under the ADA"), *aff'd on other grounds,* 247 F.3d 26; *see also Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C.,* 258 F.3d 30, 33 n. 4 (1st Cir.2001) (stating that even if a task such as driving at night "is a distinct major life activity, … [it] may be reasonably subsumed within the broader context of working and learning"). Without such precedent, this Court will not hold that driving qualifies as a major life activity, but will consider Tebo's inability to drive as subsumed within his limitation on working.

The Supreme Court has held that, with respect to the major life activity of working, the phrase "substantially limits" means that a plaintiff alleging disability discrimination must show, at a minimum, that he is:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

*Sutton,* 527 U.S. at 491, 119 S.Ct. 2139, *quoting* 29 C.F.R. § 1630.2(j)(3) (i). Further, the Court stated that in order to be substantially limited in the major life activity of working,

> one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs. *Id.,* 527 U.S. at 492, 119 S.Ct. 2139.

Plaintiff claims that his skills are essentially limited to shipping, receiving and stocking functions and driving. He further asserts that, due to his disability, he is unable to work in jobs which involve driving, out-of-doors or unstructured activity or dealing with members of the public.

To avoid summary judgment, plaintiff must offer some evidence from which a reasonable jury could find that he is significantly restricted in his ability to perform a class of jobs or a broad range of jobs in various classes. *Lebron–Torres v. Whitehall Laboratories,* 251 F.3d 236, 240 (1st Cir.2001). The evidentiary burden for this element is not onerous. *Id.* Such evidence is often proffered in the form of expert vocational testimony but in the proper case simple government statistics may suffice. *Id.* at 240–241. Plaintiff has not met his burden.

■ Although Tebo claims that his disability prevents him from working in jobs which involve driving, out-of-doors or unstructured activity or dealing with members of the public, he does not proffer any evidence from which a reasonable jury could find that he is precluded from a broad range of jobs. Tebo has submitted 27 pages of occupational statistics from the Massachusetts Division of Employment and Training but he does not explain how such data are relevant to his claim. He neither claims that he would be qualified for any of those jobs but for his disability nor that he would be prevented from performing them because of his disability. Indeed, he suggests nothing that would lead this Court to believe he has the training required to be an Aircraft Engine Specialist, Aircraft Mechanic or Aircraft Pilot, the first three jobs listed in his statistics. In fact, the first of those listed jobs has a

low level of contact with people and involves mostly work in hangars or other indoor areas without a requirement to drive. Further, Tebo provides no expert vocational testimony regarding his inability to work in a class of jobs and does not contend that he underwent an extensive job search without being able to find jobs he could perform in the geographic area. *See id.* at 241.

Tebo has failed to proffer any evidence with respect to the kinds of jobs his mental condition would prevent him from performing and thus has not presented a triable issue with respect to his disability within the meaning of the Rehabilitation Act. Thus, summary judgment in favor of the defendant is appropriate on the failure to accommodate claim. *See id.* and cases cited therein.

The Court notes that even had Tebo offered sufficient evidence to prove his disability within the meaning of the Rehabilitation Act, it is unlikely he could meet his burden of demonstrating that he was a "qualified individual" by virtue of his inability to perform the essential functions of his job with or without reasonable accommodation. Infused throughout Tebo's filings are suggestions that during at least part of the relevant time period he was unable to work at all, with or without accommodation. His Local Rule 56.1 Statement of Material Facts states:

> From June 1999, until around July 2000, Tebo was totally incapable of driving because he was having panic attacks behind the wheel. . . . Tebo experienced "non-stop" panic and anxiety attacks. . . . The panic attacks rendered Tebo unable to do even the most simple thing, including shopping. . . . Tebo was unable to work. . . .

In such a state, Tebo would not have been able to work for USPS, or any other employer, with or without accommodation.

Because summary judgment is warranted with respect to Tebo's failure to accommodate claim, the Court declines to address the other defenses raised by defendant in its motion for summary judgment, including the argument that to have accommodated Tebo by transferring him to another craft would have violated one or more CBAs.

### C. Hostile Work Environment

■ Tebo's second claim is based on an alleged hostile work environment. The First Circuit Court of Appeals has declined to decide whether hostile work environment claims are justiciable under the ADA or, by analogy, the Rehabilitation Act. *See Rocafort v. IBM Corp.*, 334 F.3d 115, 120 (1st Cir.2003). However, to the extent that a hostile work environment claim may be brought in this circuit, Tebo's failure to present a *prima facie* case for discrimination under the Rehabilitation Act renders his hostile work environment claim nonsustainable. *See Rivera–Rodriguez v. Frito Lay Snacks Caribbean*, 265 F.3d 15, 23 (1st Cir.2001) (holding that because plaintiff failed to demonstrate a substantially limiting impairment, summary judgment for defendant on ADA hostile work environment claim was properly granted) *overruled on other grounds by Crowley v. L.L. Bean, Inc.*, 303 F.3d 387 (1st Cir. 2002).

Even if Tebo's failure to present a prima facie case for discrimination did not doom his claim, he would fall short because a plaintiff alleging hostile work environment must demonstrate that "the offensive conduct is severe and pervasive enough to create an objectively hostile or abusive work environment." *Id.* at 24. The allegedly hostile acts Tebo has cited were trivial and isolated acts of poor judgment, boorish, perhaps, but insufficient to create

**69**

an objectively hostile or abusive work environment giving rise to a valid claim for relief.

### D. *Retaliation*

Tebo's claim for retaliation, similar to his claim for hostile work environment, is adversely affected by his failure to establish a prima facie case of discrimination under the Rehabilitation Act. Under both the ADA and the Rehabilitation Act, a plaintiff alleging retaliation must establish that "(1) he engaged in protected conduct, (2) he suffered adverse employment action, and (3) there was a causal connection between his conduct and the adverse action." *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 177 (1st Cir.2003).

The alleged adverse employment action in this case is that on March 20, 2000, USPS sent Tebo a letter that 1) acknowledged that Dr. Celona had warned Tebo not to drive, 2) advised Tebo that he was eligible to apply for a disability retirement, 3) requested that he provide medical documentation with respect to meeting the full requirements of his job in the near future and 4) warned that "failure to present such documentation may result in your removal from the postal service." That letter can hardly be considered retaliatory.

Tebo's Local Rule 56.1 Statement of Material Facts alleges that USPS terminated his employment on October 13, 2000, but he has provided no documentation regarding that alleged termination and defendant asserts, to the contrary, that Tebo's employment has never been terminated. In any event, Tebo acknowledges that he obtained a transfer within USPS in December, 2000 and, as far as the Court is aware, he is still working at the transfer location. Tebo's retaliation claim, therefore, fails for lack of any evidence of an adverse employment action.

### IV. *Motion to Strike*

Plaintiff has moved to strike Defendant's Exhibits B, C, D, I and M for lack of authentication and Exhibits E, H and L for having not been made on personal knowledge and/or under oath. Those documents were, in fact, authenticated by defendant, made on personal knowledge and under oath or not relied upon by the Court in its ruling on the motion for summary judgment. Therefore, the motion to strike will be denied as to the exhibits that were properly authenticated and made on personal knowledge and under oath and will be denied as moot as to the other exhibits.

### ORDER

Based on the foregoing memorandum:

1. Plaintiff's Motion to Strike Defendant's Exhibits and Affidavits (Docket No. 57) is DENIED;

2. Defendant's Motion for Leave to File a Reply Memorandum in Further Support of his Motion for Summary Judgment (Docket No. 49) is ALLOWED;

3. Plaintiff's Motion for Leave to File a Response to Defendant's Reply Memorandum (Docket No. 50) is ALLOWED; and

4. Defendant's Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 (Docket No. 41) is ALLOWED.

**So ordered.**