Yolanda **RIVERA–MERCADO,**
Plaintiff

v.

**SCOTIABANK DE PUERTO RICO–
INTERNATIONAL, et al.,**
Defendant(s).

**Civil No. 06–1018(JAG).**

United States District Court,
D. Puerto Rico.

March 6, 2008.

---

Jenyfer Garcia–Soto, Colom Fagundo & Associates, San Juan, PR, for Plaintiff.

Javier G. Vazquez–Segarra, Goldman Antonetti & Cordova, San Juan, PR, for Defendants.

## OPINION AND ORDER

JAY A. GARCIA–GREGORY, District Judge.

Pending before the Court is Defendants' Scotiabank de Puerto Rico–International, Scotiabank de Puerto Rico, Inc. ("SBPR"), Jorge Sierra, Arlene Marrero, and ABC Insurance Company (collectively "Defendants") Motion for Summary Judgment. (Docket No. 22). For the reasons set forth below, the Court **GRANTS** Defendants' Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 5, 2006, Plaintiff Yolanda Rivera Mercado ("Plaintiff") filed the present complaint against Defendants. Basically, Plaintiff alleges that she was terminated from her employment at SBPR because of her asthma condition in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. (Docket No. 1).

On May 15, 2007, Defendants moved for summary judgment. (Docket No. 22). Plaintiff opposed Defendants' Motion for Summary Judgment. (Docket No. 39). On August 13, 2007, Defendants responded to Plaintiff's opposition. (Docket No. 47). On September 7, 2007, Plaintiff filed her sur-reply. (Docket No. 54).

Defendants' Motion for Summary Judgment was referred to a Magistrate Judge. (Docket No. 57). On January 29, 2008, the Magistrate Judge issued a Report and Recommendation in which he recommended that Defendants' Motion for Summary Judgment should be granted. The Magistrate Judge concluded that the following facts were not in genuine and material dispute:

1) SBPR is a financial corporation organized under the laws of the Commonwealth of Puerto Rico.

2) On February 27, 2003, Plaintiff began working as a Manager of the Plaza Escorial branch of SBPR. Previously, she had worked with First Bank for over thirty-three years.

3) In general terms, as Manager of the Plaza Escorial branch of SBPR, Plaintiff was: responsible for generating and maintaining maximum business volumes and related revenues, consistent with negotiated short and long-term objectives of the Bank by developing new business opportunities and expanding existing connections; ensuring the delivery of a high standard of customer service, controlling branch operations; and of effectively managing the branch's human, financial and other resources.

4) Plaintiff received information or documents containing SBPR's anti-discrimination and anti-harassment policies, as well as the bank's affirmative action policies for the disabled.

5) Plaintiff's performance as of October 28, 2003, was appraised as part of her Performance Appraisal Report ("PAR") as "Meets Expectations," even though "business targets were not met," since she had only contributed to the branch's operations for half a year. On December 15, 2003, Plaintiff signed the PAR.

6) An Audit Report of the Plaza Escorial Branch performed on December, 2003, reported that "overall conditions in Escorial Branch are classified as Needs Improvement."

7) In particular, said report determined that improvement was required in the following areas: commercial loans, compliance, retailing, operations management and sales delivery.

8) On August 3, 2004, SBPR conducted a "Branch Revision Visit" at the Escorial branch.

9) Some of the findings reported during the August 3, 2004, visit to the Plaza Escorial branch of SBPR include: not correcting certain findings from a previous visit; the "Call Program" was in disarray; loans had not been adequately developed; and coaching of the assistant managers was inadequate as well as Plaintiff's marketing efforts.

10) In light of the deficiencies found during the August 3, 2004, visit to the Plaza Escorial branch of SBPR, Plaintiff was placed on a Performance Improvement Program ("PIP").

11) On August 23, 2004, a status report of a review of the files of the Plaza Escorial branch of SBPR showed that many of said files had many deficiencies (over 67% of the reviewed files needed correction).

12) On August 24, 2004, Plaintiff requested that her performance be re-valuated since she did not agree with her placement on the PIP.

13) On August 26, 2004, Plaintiff was informed that, in addition to the performance issues that had been informed to her when she was placed on the PIP, she had also violated the bank's policies and procedures related to the Customer Identification Program ("CIP").

14) The CIP is a federally mandated program that requires that a financial institution adequately maintain certain customer identifiers to protect United States citizens from terrorism and money laundering.

15) On September 7, 2004, Plaintiff was once again informed that her performance was poor and that the bank was in potential regulatory risk.

16) Plaintiff was informed that there would be a formal review of her and of Plaza Escorial's branch's performance on October 31, 2004.

17) The formal review states that the Plaza Escorial Branch of SBPR was in a state of disarray where almost all areas of the branch that were inspected were deficient.

18) On November 12, 2004, Plaintiff's employment was terminated.

19) Plaintiff suffers from asthma.

20) Prior to her termination, no one from SBPR mentioned anything about her alleged asthma condition.

21) Plaintiff does not consider herself to be disabled.

22) Plaintiff does not consider that her asthma condition impaired her ability to perform her duties as Manager of the Plaza Escorial branch of SBPR.

23) When asked if she had ever requested reasonable accommodations for her asthma condition, Plaintiff answered: "No sir, I had no reason to do so."

24) On April 21, 2005, Plaintiff filed a disability discrimination charge in the Equal Employment Opportunity Commission ("EEOC").

After considering all the aforementioned facts, the Magistrate Judge found that Plaintiff failed to submit sufficient evidence to support her claim that her asthma condition rendered her disabled within the meaning of the ADA.[1] Additionally, the

---

1. To qualify as disabled under the ADA'S definition of disability, a claimant must initially prove that he or she has a physical or mental impairment. *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)(citing 42 U.S.C. § 12102(2)(A)). A "physical impairment," the type of impairment relevant to this case includes physical impairments to a persons's respiratory organs. *See* 45 CFR § 84.3(j)(2)(I). However, "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor*, 534 U.S. at 195, 122 S.Ct. 681. The impairment must limit a major life activity. *See* 42 U.S.C. § 12102(2)(A). Examples of "major life activities," include "walking, seeing, hearing," and, as relevant here, "performing manual tasks." 45 CFR § 84.3(j)(2)(ii) (2001).

Furthermore to qualify as disabled, a claimant must demonstrate that the limitation on the major life activity is "substantial." 42 U.S.C. § 12102(2)(A). A person is "substantially limited" when he/she is "unable to perform a major life activity that the average person in the general population can perform"; or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Toyota Motor*, 534 U.S. at 196, 122 S.Ct. 681 (citing 29 CFR § 1630.2(j)). In determining whether an individual is substantially limited in a major life activity, the regulations instruct that the following factors should be considered: "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." *Id.* (citing 29 CFR §§ 1630.2(j)(2)(i)-(iii)).

Magistrate Judge concluded that Plaintiff failed to prove that her asthma condition rendered her disabled within the meaning of the statute because she did not proffer sufficient evidence to prove that Defendants regarded her as impaired in her ability to breathe and/or work.[2]

Furthermore, the Magistrate Judge noted that Plaintiff failed to allege in the complaint that she was limited in the major activities, namely, speaking, running, walking and working. The Magistrate also found that Plaintiff failed to allege that Defendants regarded her as disabled as required by the ADA. The Magistrate Judge stated that Plaintiff made said allegations for the first time in her reply and sur-reply to Defendants' Motion for Summary Judgment. As such, the Magistrate Judge concluded that Plaintiff could not attempt to amend her allegations by claiming for the first time in her opposition to the Motion for Summary Judgment and in the sur-reply that her ability to perform major life activities was impaired by her

asthma and that Defendants regarded her as disabled.

Finally, the Magistrate Judge found that Plaintiff's ADA claim must fail because she failed to present evidence that Defendants regarded her disabled with respect to "either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skill and abilities."[3] For these reasons, the Magistrate Judge recommended that this Court should grant Defendants' Motion for Summary Judgment. (Docket No. 59). On February 15, 2007, Plaintiff filed her objections to the Report and Recommendation. (Docket No. 64).

## STANDARD OF REVIEW

### 1) *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to inter-

---

**2.** The ADA'S definition of disability includes "a physical or mental impairment that substantially limits one or more ... major life activities," or as "being regarded as having such an impairment." *Sutton v. United Air Lines*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (citing 42 U.S.C. §§ 12102(2)(A), 12102(2)(C)). In *Sutton*, the Supreme Court explained when a claimant may fall under the ADA definition of being disabled because the employer mistakenly believed he/she had an impairment. Specifically, the Supreme Court stated that:

There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a

substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139.

However, to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job. *Murphy v. UPS*, 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999).

**3.** "When referring to the major life activity of working, the Equal Employment Opportunity Commission (EEOC) defines substantially limits as: significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Murphy v. UPS*, 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (internal quotations and citations omitted).

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is "insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

2) *Standard for Reviewing a Magistrate–Judge's Report and Recommendation*

 Pursuant to ·28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b); and Local Rule 503; a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. *See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.*, 286 F.Supp.2d 144, 146 (D.P.R.2003). The adversely affected party may "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." *United States of America v. Mercado Pagan*, 286 F.Supp.2d 231, 233 (D.P.R.2003) (quoting 28 U.S.C. §§ 636(b)(1). If objections are timely filed, the District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." *Rivera de Leon v. Maxon Eng'g Servs.*, 283 F.Supp.2d 550, 555 (D.P.R.2003). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate", however, if the affected party fails to timely file objections, " 'the district court can assume that they have agreed to the magistrate's recommendation'." *Alamo Rodriguez,* 286 F.Supp.2d at 146 (quoting *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985).

## Discussion

Plaintiff proffers several objections to the Magistrate Judge's Report and Recommendation. First, Plaintiff objects to several facts that were deemed not in issue by the Magistrate Judge. Second, Plaintiff objected to the Magistrate Judges's finding that her ADA claim must fail because she failed to present evidence that Defendants regarded her as disabled with respect to "either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skill and abilities." According to Plaintiff, existing case law does not mandate that she present such evidence. Third, Plaintiff notes that the Magistrate Judge held that she failed to specifically allege that Defendants regarded or perceived her as disabled as required by the ADA. She requests permission to amend the complaint in order to include this allegation.

The Court will only discuss the first and third objections because their disposition leads this Court to the conclusion that Plaintiff failed to proffer an adequate ADA claim. Consequently, this Court need not discuss the second objection.

■ We begin our analysis with Plaintiff's objection to some of the Magistrate Judge's finding of facts. Specifically, Plaintiff objects to finding of facts 13, 16, 17 and 20.[4] Plaintiff contends that fact 20

is of central importance to the present case.

Fact 20 states as follows: "Prior to her termination, no one from SBPR mentioned anything about her alleged asthma condition." According to Plaintiff, Defendants were aware that Plaintiff had an asthma condition prior to her termination. In support of this allegation, Plaintiff points to the Branch Review Summary which states in pertinent part that: "Attendance is high. Just the Manager had several absences due to her asthma condition." (Docket No. 39, Exh. 4). The record provides other evidence that supports Plaintiff's contention that SBPR was aware of her condition prior to her termination. Namely, there is an annotation in Plaintiff's termination letter, which makes note of her asthma condition. Said annotation states in pertinent part as follows:

> 11/12/04—3:50pm. In a conversation with Yolanda Rivera (Marrero/Sierra), she informed us that her most recent recurring absences were due to the fact that she suffered from asthmatic bronchitis, but that her asthma is not an obstacle in the performance of her work, that it has nothing [to do] with [her] position/job at the bank. (Docket No. 37, Exh. 2).

Thus, the Court finds that there is a notable factual controversy regarding fact 20. However, said factual controversy could only prevent summary judgment if said fact is "material."

■ As mentioned previously, in order to grant a motion for summary judgment, there should be no genuine issue of material fact. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Therefore, only material facts are capable of defeating an otherwise properly supported motion for summary judgment. "As to materiality, the sub-

---

**4.** All the facts considered by the Magistrate Judge are stated in the Factual and Procedural Background of this opinion and order.

stantive law will identify which facts are material." *Id.* Thus, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

### 1. *Record of Disability*

The Magistrate Judge found that the fact that SBPR was aware of Plaintiff's condition is insufficient to demonstrate that SBPR regarded her as disabled or that the perception caused the adverse employment action. This Court agrees with the Magistrate Judge's conclusion.

"Disability," with respect to an individual, is defined under the ADA as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Thus, to establish that she has a disability within the meaning of the ADA, Plaintiff must show: (1) that she has a physical or mental impairment that substantially limits one or more of her major life activities; (2) that she has a record of such impairment; or (3) that she was "regarded as" having such an impairment by SBPR.

Subsection (B) of section 12102(2) qualifies an individual as having a disability if that person has a record of having a mental or physical impairment that substantially limits one or more major life activities. 29 C.F.R. § 1630.2(k). Furthermore, to successfully establish an ADA claim the employer, in making the employment decision, must rely on the record indicating that the plaintiff has or had a substantially limiting impairment. *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 615 (5th Cir.2001); *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 961 (8th Cir.2000); *Khalil v. Rohm & Haas Co.*, 2008 U.S. Dist. LEXIS 10169, 2008 WL 383322 (D.Pa. 2008).[5]

■ However, mere knowledge of an impairment does not create a record of an impairment. *Taylor*, 214 F.3d at 961. Under the ADA, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action." [6] *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir.1996); *see also Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir.2001)(affirming grant of summary judgment for defendant where plaintiff proved only that her employers knew she suffered from asthma and migraines, but doubted the severity of her condition); *Soler v. Tyco Elecs., Inc.*, 268 F.Supp.2d 97 (D.P.R.2003) (The Court held that although the employer was aware of the employee's heart condition, this was insufficient to show that the employer regarded him as disabled.).

Basically, in order to succeed in her ADA claim, Plaintiff must demonstrate that: 1) there is a record of her asthma condition, 2) that her asthma condition substantially limits one of her major life activities, and 3) that SBPR's decision to terminate her was based on her asthma

---

**5.** "There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records." *Khalil v. Rohm & Haas Co.*, 2008 U.S. Dist. LEXIS 10169, 2008 WL 383322 (D.Pa.2008).

**6.** Under the ADA and the EEOC regulations, a claimant may be considered disabled even if his impairment does not substantially limit a major life activity. Such is the case when the claimants impairment "is treated by a covered entity as constituting such limitation." 29 C.F.R. § 1630.2(1)(1).

record. In the present case, there is no evidence that shows that SBPR had a record of Plaintiff's condition. SBPR might have been aware of her condition but it did not have Plaintiff's medical records or any other documentation which shed light on the alleged gravity of her asthma.[7] We interestingly note that Plaintiff stated in her deposition that she did not consider herself as a person with disability and that she never requested reasonable accommodation because she had no reason to do so. (Docket No. 52, Exh. 1, page 60, lines 16–18).

The record is devoid of any evidence that demonstrates that Defendants relied on Plaintiff's asthma condition when they terminated her. Thus, even if Defendants were aware of Plaintiff's condition, this by itself would not affect the outcome of the suit under the governing law.[8] As a result, this Court holds that fact 20 is not "material."

After reviewing facts 13, 16 and 17, the Court also finds that they are not "material" facts.[9] These facts are irrelevant.[10] Thus, even if there was an issue as to facts 13, 16, 17 and 20, the contested facts do not have the potential to preclude Plaintiff's Motion for Summary Judgment.[11]

Moreover, the Court holds that Plaintiff failed to demonstrate that SBPR took into consideration her asthma condition when it terminated her. Thus, Plaintiff has failed to proffer an adequate ADA claim.

### 2. Plaintiff's Failure to Adequately State a Claim

■ Plaintiff also failed to proffer an adequate ADA claim because she failed to specifically allege that Defendants regarded or perceived her as disabled as required by the ADA. In her objections, Plaintiff requested the Court permission to amend the present complaint to include the "regard as" claim.

As mentioned previously, subsection (C) of Section 12102(2) defines disability as: "being regarded as having such an impairment." In order to state a claim under subsection (C), a plaintiff must specifically allege in her complaint that her "employer regarded her as having an impairment within the meaning of the [ADA]." See Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); Cox v. Civista Med. Ctr., 16 Fed. Appx. 185, 186 (4th Cir.2001). Failure to do so could result in the dismissal of an ADA claim. Cox, 16 Fed.Appx. at 186;

---

7. The Magistrate Judge took into consideration that Plaintiff had an oxygen tank at work.

8. Khalil v. Rohm & Haas Co., 2008 WL 383322, **12–13, 2008 U.S. Dist. LEXIS 10169, 34–35 (E.D.Pa.2008)(Holding that the knowledge of Plaintiff's asthma alone was insufficient to establish a record of an impairment.)

9. As mentioned above, facts 13, 16, and 17 state as follows: 13) On August 26, 2004, Plaintiff was informed that, in addition to the performance issues that had been informed to her when she was placed on the PIP, she had also violated the bank's policies and procedures related to the Customer Identification Program ("CIP").

16) Plaintiff was informed that there would be a formal review of her and of Plaza Escori-

al's branch's performance on October 31, 2004.

17) The formal review states that the Plaza Escorial Branch of SBPR was in a state of disarray where almost all areas of the branch that were inspected were deficient.

10. "[F]actual disputes that are irrelevant or unnecessary will not be counted" when deciding a Motion for Summary Judgment. Rodriguez v. Pfizer Pharms., Inc., 286 F.Supp.2d 144, 151 (D.P.R.2003)(citing Anderson, 477 U.S. at 248, 106 S.Ct. 2505).

11. We interestingly note that Plaintiff conceded that his fact objections do not contradict the Report and Recommendation's findings.

*Saunders v. Baltimore County, Md.,* 163 F.Supp.2d 564, 566 (D.Md.2001)(finding plaintiff alleged only that employer was aware of his asthma, and not that employer perceived plaintiff as disabled as a result of his asthma). *See also Medlock v. City of St. Charles,* 89 F.Supp.2d 1079, 1082 (E.D.Mo.2000) (finding that plaintiff could not proceed in her ADA suit under a theory that she was regarded as being disabled, since her complaint did not state that the employer perceived the plaintiff as having a substantially limiting impairment).

Plaintiff states in her complaint that SBPR was aware that she was asthmatic. However, the first time that Plaintiff alleged that SBPR regarded her as disabled was in the opposition to the request for summary judgment. This Court has held that it will not allow a plaintiff to amend his/her allegations through his/her opposition pleading. *Rodriguez v. Pfizer Pharms., Inc.,* 286 F.Supp.2d 144, 152 (D.P.R.2003).

Plaintiff requests permission to amend her complaint to include her "regarded as" claim. Nonetheless, even if this Court were to permit Plaintiff to amend her allegations, it would not change the fact that SBPR was merely aware of her asthma condition.

Defendants have the burden of establishing the nonexistence of a genuine issue as to a material fact.[12] *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, this burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In the present case, there is no evidence in

the record to support the contention that SBPR perceived Plaintiff as being disabled. This shifts the burden to Plaintiff, who in order to preclude Defendants' Motion for summary Judgement, must "demonstrate that a trier of fact reasonably could find in [her] favor." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548).

The Court finds that Plaintiff has failed to demonstrate that the record contains evidence supporting her allegation that SBPR perceived her as disabled. The record reflects that SBPR was only aware of her condition. Furthermore, as mentioned previously, there is no evidence that SBPR took into consideration Plaintiff's asthma condition when she was fired. Thus, the amendment requested by Plaintiff will not change the fact that she does not meet the requirements necessary in order to proffer an adequate ADA claim. Consequently, Plaintiff's Motion for Summary Judgment shall be granted.

### CONCLUSION

For the reasons stated above, the Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation, (Docket No. 59), in its entirety and, accordingly, **GRANTS** Defendants' Motion for Summary Judgment. (Docket No. 22). Judgment shall be entered accordingly.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

MARCOS E. LÓPEZ, United States Magistrate Judge.

#### I. PROCEDURAL BACKGROUND

On January 5, 2006, plaintiff Yolanda Rivera–Mercado ("Rivera") filed the com-

---

**12.** "This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party." *Rodriguez v. Pfizer Pharms., Inc.,* 286 F.Supp.2d 144, 151 (D.P.R.2003) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

plaint in this case against: (1) Scotiabank de Puerto Rico–International; (2) Scotiabank de Puerto Rico, Inc.; (3) Jorge Sierra ("Sierra"); (4) Arlene Marrero ("Marrero"); and (5) ABC Insurance Company, as an unknown defendant (collectively, "defendants").[1] Rivera alleges that she was terminated from her employment at SBPR because of her asthma condition, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. Docket No. 1.

On May 15, 2007, defendants moved for summary judgment on Rivera's claims. Docket No. 22. On July, 2, 2007, Rivera opposed the request for summary judgment. Docket No. 39. Defendants replied on August 13, 2007, and Rivera surreplied on September 7, 2007. Docket No. 47 and 54, respectively.

Pursuant to the Referral Order issued by the court on October 4, 2007, defendants' request for summary judgment was referred to the undersigned for a Report and Recommendation. Docket No. 57.

## II. Factual Background

The following material facts are not in genuine issue or dispute pursuant to the stipulations and supporting evidence submitted by the parties:

1. SBPR is a financial corporation organized under the laws of the Commonwealth of Puerto Rico. Docket No. 22, Defendants' Statement of Uncontested Facts ("SUF"), ¶ 1; Docket No. 39, Rivera's Reply Statement of Facts ("RSF"), ¶ 1.

2. Rivera began working as a Manager of the Plaza Escorial branch of SBPR on February 27, 2003. Previously, she had worked with First Bank for over thirty-three years. Docket No. 22, SUF, ¶¶ 2, 3 and Exhibit 1 (Rivera's depo., page 12, line 5); Docket No. 39, RSF, ¶¶ 2, 3; see also Docket No. 1 (Complaint, ¶ 5).

3. In general terms, as Manager of the Plaza Escorial branch of SBPR, Rivera was:

> responsible for generating and maintaining maximum business volumes and related revenues, consistent with negotiated short and long-term objectives of the Bank, by developing new business opportunities and expanding existing connections; ensuring the delivery of a high standard of customer service, controlling branch operations; and by the effective management of the branch's human, financial and other resources.

Docket No. 22, Exhibit 2 (Branch Manager Job Description, page 1) and SUF, ¶ 4; Docket No. 39, RSF, ¶ 4.

4. Rivera received information of or documents containing SBPR's anti-discrimination and anti-harassment policies, as well as the bank's affirmative action policies for the disabled. Docket No. 22, SUF, ¶ 5; Docket No. 39, RSF, ¶ 5.

5. Rivera's performance as of October 28, 2003, was appraised as part of her Performance Appraisal Report ("PAR") as "Meets Expectations", even though "business targets were not met," since she had only contributed to the branch's operations for half a year. Rivera signed the PAR on

---

1. The complaint, however, fails to make any distinction between Scotiabank de Puerto Rico–International and Scotiabank de Puerto Rico, Inc. and fails to specify which of the allegations contained therein are directed to each of said entities. Instead, all the allegations in the complaint are directed towards an entity named "Scotiabank de Puerto Rico" ("SBPR"). See Docket No. 1. In light of this, the court will assume that Scotiabank de Puerto Rico–International, Scotiabank de Puerto Rico, Inc. and SBPR are the same entity and that all the claims and allegations asserted in the complaint are directed towards SBPR.

December 15, 2003. Docket No. 22, Exhibit 5 (Performance Appraisal Report, page 3) and SUF, ¶ 6; Docket No. 39, RSF, ¶ 6.

6. An Audit Report of the Plaza Escorial branch performed on December, 2003, reported that "overall conditions in Escorial Branch are classified as Needs Improvement." Docket No. 22, SUF, ¶ 7; Docket No. 39, RSF, ¶ 7.

7. In particular, said report determined that improvement was required in the following areas: commercial loans, compliance, retailing, operations management and sales delivery. Docket No. 22, Exhibit 6 (Audit Report, pages 3–4).

8. SBPR conducted a "Branch Revision Visit" in the Escorial branch on August 3, 2004. Docket No. 22, SUF, ¶ 9; Docket No. 39, RSF, ¶ 9.

9. Some of the findings reported during the August 3, 2004, visit to the Plaza Escorial branch of SBPR include: (1) not correcting certain findings from a previous visit; (2) the "Call Program" was in disarray; (3) loans had not been adequately developed; and (4) coaching of the assistant managers was inadequate as well as Rivera's marketing efforts. Docket No. 22, Exhibit 7 (Letter from Sierra and Marrero to Rivera, dated August 6, 2004) and (SUF, ¶ 10; Docket No. 39, RSF, ¶ 10).[2]

10. In light of the deficiencies found during the August 3, 2004, visit to the Plaza Escorial branch of SBPR, Rivera was placed on a Performance Improvement Program ("PIP"). Docket No. 22, Exhibit 7 (Letter from Sierra and Marrero to Rivera, dated August 6, 2004) and SUF, ¶ 11; Docket No. 39, RSF, ¶ 11.[3]

11. On August 23, 2004, a status report of a review of the files of the Plaza Escorial branch of SBPR showed that many of said files had many deficiencies (over 67% of the reviewed files needed correction). Docket No. 22, Exhibit 8 (Status Report, dated August 23, 2004) and SUF, ¶ 12; Docket No. 39, RSF, ¶ 12.[4]

12. On August 24, 2004, Rivera requested that her performance be re-evaluated since she did not agree with her placement on the PIP. Docket No. 22, SUF, ¶ 13; Docket No. 39, RSF, ¶ 13.

13. On August 26, 2004, Rivera was informed that, in addition to the performance issues that had been informed to her when she was placed on the PIP, she had also violated the bank's policies and procedures related to the Customer Identification Program ("CIP"). Docket No. 22, SUF, ¶ 14; Docket No. 39, RSF, ¶ 14.

14. The CIP is a federally mandated program that requires that a financial in-

---

2. Rivera qualifies this statement alleging that she sent an electronic mail message to Sierra explaining certain facts relevant to the reported findings. Docket No. 39, RSF, ¶ 10 and Exhibit 2 (Electronic mail message from Rivera to Sierra, dated August 9, 2004). Plaintiffs allegations do not contradict the facts stated herein.

3. Rivera qualifies this statement alleging that she requested a "reevaluation" of her performance insofar she believed that her placement on the PIP was an unwarranted sanction. Docket No. 39, RSF, ¶ 11; Docket No. 22, Exhibit 9 (Letter from Rivera to Thomas Johnson ("Johnson"), dated August 24, 2004).

Plaintiff's allegations do not contradict the facts stated herein.

4. Rivera qualifies this statement alleging that the status report also showed that the deficiencies were corrected that same day and that Johnson later congratulated her for her work in reviewing and correcting the files. Docket No. 39, RSF, ¶ 12 and Exhibit 2, page 4 (Electronic mail message from Johnson to Rivera, dated September 23, 2004); Docket No. 22, Exhibit 9 (Letter from Rivera to Thomas Johnson, dated August 24, 2004). Plaintiff's allegations do not contradict the facts stated herein.

stitution adequately maintains certain customer identifiers to protect United States citizens from terrorism and money laundering. Docket No. 22, SUF, ¶ 15; Docket No. 39, RSF, ¶ 15.

15. On September 7, 2004, Rivera was once again informed that her performance was poor and that the bank was in potential regulatory risk. Docket No. 22, SUF, ¶ 16; Docket No. 39, RSF, ¶ 16.

16. Rivera was informed that there would be a formal review of her and of Plaza Escorial branch's performance on October 31, 2004. Docket No. 22, SUF, ¶ 17; Docket No. 39, RSF, ¶ 17.

17. The formal review states that the Plaza Escorial branch of SBPR was in a state of disarray where almost all areas of the branch that were inspected were deficient ("the takeover procedures, the attention to compliance policies, the attention to significant account movements, the actioning of the recycle report, workflow issues (commercial account openings and administration issues) are all far form bank standards"). Docket No. 22, SUF, ¶ 19 and Exhibit 14 (Sales & Service Support Site Visit, page 12).

18. Rivera's employment was terminated on November 12, 2004. Docket No. 22, SUF, ¶ 20; Docket No. 39, RSF, ¶ 20.

19. Rivera suffers from asthma. Docket No. 22, SUF, ¶ 21; Docket No. 39, RSF, ¶ 21.

20. Prior to her termination, no one from SBPR mentioned anything about her alleged asthma condition. Docket No. 22, SUF, ¶ 23; Docket No. 39, RSF, ¶ 23.

21. Rivera does not consider herself to be disabled. Docket No. 22, SUF, ¶ 24; Docket No. 39, RSF, ¶ 24.

22. Rivera does not consider that her asthma condition impaired her ability to perform her duties as Manager of the Pla-

za Escorial branch of SBPR. Docket No. 22, SUF, ¶ 25; Docket No. 39, RSF, ¶ 25.

23. When asked if she had ever requested reasonable accommodation for her asthma condition, Rivera answered: "No sir, I had no reason to do so." Docket No. 22, SUF, ¶ 26; Docket No. 39, RSF, ¶ 26.

24. On April 21, 2005, Rivera filed a disability discrimination charge in the Equal Employment Opportunity Commission. Docket No. 22, SUF, ¶ 27; Docket No. 39, RSF, ¶ 27.

### III. SUMMARY JUDGMENT STANDARD

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c), 28 U.S.C; *see also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c), 28 U.S.C. The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the

ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is "insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)...."

*Greenburg v. Puerto Rico Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987).

Finally, when considering a request for summary judgment, unsettled issues of motive and intent as to the conduct of any party will normally preclude the court from granting summary judgment. *Mulero–Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 677 (1st Cir.1996) (reversing summary judgment and emphasizing that "determinations of motive and intent ... are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); *see also Tew v. Chase Manhattan Bank, N.A.*, 728 F.Supp. 1551, 1555 (S.D.Fla.1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.' "); *Pearson v. First N H Mortgage Corp.*, 200 F.3d 30, 35, n. 2 (1st Cir.1999). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996).

## IV. LEGAL ANALYSIS

Congress enacted ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The purpose of ADA is to protect qualified persons with a disability from discrimination in employment. 42 U.S.C. § 12112(a). ADA prohibits discrimination against an otherwise qualified individual based on his or her disability in all employment practices, including, but not limited to job application

procedures, hiring, firing, advancement and compensation. *Id.*

To establish a claim of disability discrimination under the ADA, a plaintiff must show that: (1) he suffers from a "disability" within the meaning of the statute; (2) he was able to perform the essential functions of the job, with or without reasonable accommodation; and (3) the employer took adverse employment against him due to the disability. *Lebrón–Torres v. Whitehall Laboratories,* 251 F.3d 236, 239 (1st Cir. 2001); *Feliciano v. State of Rhode Island,* 160 F.3d 780, 784 (1st Cir.1998) (*citing Katz v. City Metal Co., Inc.,* 87 F.3d 26, 30 (1st Cir.1996)). Thus, the threshold question in any ADA action is whether the plaintiff can make a showing of disability. *Lessard v. Osram Sylvania, Inc.,* 175 F.3d 193, 197 (1st Cir.1999); *Vélez v. Janssen Ortho LLC,* 389 F.Supp.2d 253, 263 (D.P.R.2005); *Sifre v. Department of Health,* 38 F.Supp.2d 91, 99 (D.P.R.1999) (*citing Roth v. Lutheran General Hosp.,* 57 F.3d 1446, 1455 (7th Cir.1995)).

■ ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;(B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In order to determine whether a person is disabled under the ADA, the court must conduct a tripartite analysis. *Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *Carroll v. Xerox Corp.,* 294 F.3d 231, 238 (1st Cir.2002). First, plaintiff must prove that he suffers from a physical or mental impairment. *Carroll,* 294 F.3d at 238.[5] Second, the court must evaluate the life activities affected by the impairment to determine if they constitute a "major life activity". *Id.* Lastly, "tying the two statutory phrases together, we ask whether the impairment substantially limits the activity found to be a major life activity." *Id.; Lebrón–Torres,* 251 F.3d at 239–40.

Defendants move the court to enter summary judgment as to Rivera's claims alleging that her asthma condition did not render Rivera disabled within the meaning of the ADA. To support this allegation, defendants emphasize the point that Rivera admits as uncontested facts that she did not consider herself to be disabled, did not consider that her asthma condition impaired her ability to perform her duties as Manager of the Plaza Escorial branch of SBPR and never requested, and had no reason to request, reasonable accommodation for her asthma condition. Docket No. 22, SUF, ¶¶ 22–24; Docket No. 39, RSF, ¶¶ 22–24. In particular, defendants argue that Rivera fails to submit any evidence that she is a disabled individual for purposes of the ADA or that she was impaired or unable to perform any major life activity. Docket No. 22 (Memorandum of Law in Support of Motion for Summary Judgment, pages 7–9).

Rivera claims that "despite her limitations, she was able to perform her job without accommodation and that even if she did exhibit deficiencies in her performance, there is direct evidence that her disability was the motivating factor or at least one of the motivating factors" for her

---

5. Under ADA regulations, a physical or mental health impairment is defined as: "Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(1).

termination. Docket No. 39 (Opposition to Motion for Summary Judgment, page 6); *see also* Docket No. 54 (Surreply, page 2) ("Plaintiff presented sufficient evidence to support all reasonable inferences in her favor regarding her disability."). According to Rivera, said evidence consists of: (1) her medical record (which allegedly documents her asthma condition) (Docket No. 39, Exhibit 1); (2) the fact that defendants were aware that she suffered from asthma, as evidenced by a document titled "Branch Review Summary", dated October 14, 2004, in which it is stated that: "Attendance is high. Just the Manager had several absences due to her asthma condition." (Docket No. 39, Exhibit 4, page 3); (3) the fact that her condition allegedly impaired her in the major life activity of breathing (which in turn limited her in other major life activities as well, such as speaking, walking, running or working) to the point that she had an oxygen tank in her workplace to help her breathe when she needed it (*see* Docket No. 54, page 3); [6] and (4) the fact that she used several medications, such as Advair, Albuterol and Foradil, to treat her asthma condition.[7]

Rivera further alleges that "even if it [is] concluded that [she] is not disabled under ADA, she was regarded as disabled by her employer", as demonstrated by some handwritten annotations contained in her termination letter. Docket No. 39 (Opposition to Motion for Summary Judgment, page 7). One of said annotations states the following:

> 11/12/04—3:50 pm. In a conversation with Yolanda Rivera (Marrero/Sierra), she informed us that her most recent recurring absences were due to the fact that she suffered from asthmatic bronchitis, but that her asthma is not an obstacle in the performance of her work, that its has nothing [to do] with [her] position/job at the bank.

Docket No. 37, Exhibits 1, 2. Marrero's signature appears below this note. *Id.* The second handwritten annotation states that Rivera "was given the opportunity to resign, but she preferred to be dismissed." *Id.* Both Marrero's and Sierra's signatures appear below this second annotation. *Id.*

As stated before, ADA regulations include "[a]ny physiological disorder, or condition ... [that] affect[s] ... respiratory ... organs" within the definition of "physical or mental impairment." 29 C.F.R. § 1630.2(h)(1). Thus, Rivera's asthma is a physical impairment within the meaning of ADA. To be a disability, however, said impairment must also substantially limit a major life activity. Major life activities

---

**6.** It is not entirely clear whether, despite her admission that her asthma condition did not impair her ability to perform her duties as Manager of the Plaza Escorial branch of SBPR (*see* Docket No. 22, SUF, ¶¶ 24–26; Docket No. 39, RSF, ¶¶ 24–26), Rivera is also claiming that her asthma substantially impaired her ability to work. In the reply, defendants assert that it was in the opposition to the request for summary judgment that Rivera alleged, for the first time and "through the 'back door'", that she was impaired of working as a result of her asthma, and that said specific allegation was not made in the complaint. *See* Docket No. 47, page 4. In the sur-reply, Rivera responds that she "did not allege, through the back door, as [d]efendants states, that she was limited in her ability to work." Docket No. 54, page 3. Rivera, however, asserts that she "clearly stated that she was limited in her ability to breathe due to her asthma condition", but that it could be "argued that the ability to breath is so central to life itself, that the ability to work can be limited by such condition." *Id.*

**7.** According to Rivera, Advair is a medication used as a "maintenance treatment", Albuterol is used for "sudden asthma attacks" and Foradil is "a long acting bronchodilator used to open air passages to improve breathing". Docket No. 39 (Opposition to Motion for Summary Judgment, page 6).

include: "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *see also Reeves v. Johnson Controls World Services, Inc.*, 140 F.3d 144, 152 (2nd Cir. 1998) ("A plaintiff claiming that her asthma substantially limits her ability to engage in the major life activity of breathing is not first asked to prove that breathing is a major life activity for her."). Rivera is "substantially limited" in a major life activity if she is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

The determination of whether an impairment is substantially limiting is made on an individual basis by considering three factors: (1) "[t]he nature and severity of the impairment"; (2) "[t]he duration or expected duration of the impairment"; and (3) "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

▪ In light of the fact that Rivera admits as an uncontested fact that she did not consider herself to be disabled and never requested reasonable accommodation for her asthma condition because she had no reason to do so and, more importantly, insofar she never considered that her asthma condition impaired her ability to perform her duties, *see* Docket No. 22, SUF, ¶¶ 22–24; Docket No. 39, RSF, ¶¶ 22–24, Rivera can not now claim that she is disabled and that her asthma condition substantially impaired her ability to perform her job. Although in her opposition to the motion for summary judgment and her subsequent sur-reply plaintiff alleges that it would be readily apparent to a jury that she is substantially limited in the major life activity of breathing (Docket 39, page 6; Docket No. 54, page 3), she fails to make a single citation to the record in support of her contention. Therefore, these conclusory allegations are insufficient to retract plaintiff's admissions during her deposition to the effect that she did not view herself as disabled or as having an impairment to perform her job duties. *See* Docket No. 34, Exhibit 1 (Rivera's depo., page 58, lines 13–14); Docket No. 52, Exhibit 1 (Rivera's depo., page 60, lines 16–18).[8]

In addition, the claim that Rivera was impaired in the major life activities of speaking, running, walking and/or working is made for the first time in the opposition to the request for summary judgment, and in the subsequent sur-reply. Docket No. 39, page 6; Docket No. 54, page 3. In the complaint, however, Rivera fails to allege that her asthma condition impaired her in said major life activities. *See* Docket No. 1. To that extent, the court explained in *Alamo–Rodríguez v. Pfizer Pharmaceuti-*

---

**8.** During her deposition, Rivera made the following admissions:

Q Do you consider yourself a person with disabilities?
A No. . . .
Docket No. 34, Exhibit 1 (Rivera's depo., page 58, lines 13–14). She also provided the following testimony:

Q Did you on any occasion request reasonable accommodation?
A No, sir. I did not have a reason to do so.
Docket No. 52, Exhibit 1 (Rivera's depo., page 60, lines 16–18).

*cals, Inc.,* 286 F.Supp.2d 144 (D.P.R.2003), that:

> Plaintiff, in the complaint, limited his allegations, and only sustained that he was a disabled individual, that he could work if given accommodation, and that [d]efendant discriminated against him for failure to provide the reasonable accommodation he requested. Plaintiff, for the first time in his [o]pposition [...], identifies, and alleges, without more, that the three life activities of having sex, sleep, and exercise, were burdened. The [c]ourt will not allow [p]laintiff to attempt to amend his allegations through the [o]pposition pleading. It is one matter that the [c]ourt must analyze the factual scenario in this case construing the facts, the record, and all reasonable inferences in the light most favorable to the party opposing summary judgment. Another is to allow the [p]laintiff to bring forth new never raised allegations, and previously unmentioned major life activities that have been allegedly affected. The [c]ourt is not obliged to search the record, where [p]laintiff failed to request to amend the complaint, in order to set forth those new allegations, and theories.

*Id.,* at 153 (internal citations omitted). Having failed to allege in the complaint that she was limited in the major life activities of speaking, running, walking or working, Rivera can not now attempt to amend her allegations by claiming for the first time in the opposition and sur-reply that her ability to do so was impaired by her asthma.

█ Furthermore, the evidence submitted by Rivera is insufficient to support her claim that her asthma condition rendered her disabled within the meaning of the statute. First, although Rivera submits her medical record which allegedly "document[s] her asthma condition" and her

"asthma related hospitalizations and medications since 1998" (Docket No. 54, Surreply, page 2; Docket No. 39) (Opposition to Motion for Summary Judgment, page 6), she makes no specific references to said record in support of her allegations that her condition is of such nature and degree that she is substantially limited in a major life activity. Furthermore, Rivera can not rely on her asthma diagnosis alone to prove disability under the ADA. As stated by the Supreme Court in *Toyota Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002):

> It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those "claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial."

*Id.,* at 198; *see also Calef v. Gillette Co.,* 322 F.3d 75, 83 (1st Cir.2003); *Carroll,* 294 F.3d at 238; *Alamo Rodríguez,* 286 F.Supp.2d at 156. Finally, when evaluating whether an individual is substantially limited in a major life activity, courts are to consider mitigating measures, such as medication, and their impact on the activity. To that extent, it has been established that:

> A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating

measures still has an impairment, but if the impairment is corrected, it does not "substantially limi[t]" a major life activity.

*Sutton v. United Air Lines,* 527 U.S. 471, 482–83, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Thus, the relevant inquiry regarding Rivera's need to use several medications and treatments for her asthma and to have an oxygen tank in her workplace to help her breathe is whether the use of said drugs and treatments corrected Rivera's asthma and hence eliminated any substantial limitation of a major life activity. Since Rivera admitted in her deposition that she did not consider herself as having a disability, then the logical conclusion of Rivera's own admission is that the medications and treatments that she was receiving corrected any impairment, if said impairment ever existed.

■ Thus, the court determines that Rivera has failed to present sufficient evidence to create a genuine issue of material fact as to whether her asthma condition rendered her disabled within the meaning of the ADA. This conclusion, however, does not end the inquiry. In her opposition to summary judgment, Rivera also alleges that even if her asthma did not render her disabled within the meaning of the ADA, she is still protected by said statute because defendants regarded her as being disabled as a result of her condition. Docket No. 39 (Opposition to Motion for Summary Judgment, page 7) ("even if it [is] concluded that [she] is not disabled under ADA, she was regarded as disabled by her employer"). In support of this allegation, Rivera claims that Marrero, former Human Resources Manager of SBPR, in the presence of Sierra, Vice–President of "Branch Banking" of SBPR, told her on the day of her termination that "maintaining an oxygen tank in the office affects the image of the Bank." Docket No. 22, SUF,

¶ 22; Docket No. 39, RSF, ¶ 22. Plaintiff also points to the fact that defendants mentioned Rivera's asthma in the Branch Review Summary and to the handwritten comments in the termination letter. Docket No. 39, Exhibit 4, page 3; Docket No. 37, Exhibit 3. In evaluating plaintiffs allegation that she was regarded as disabled the court will indulge all reasonable inferences in her favor and accept as true, for purposes of evaluating the merits of the motion for summary judgment, the factual allegations mentioned above.

As stated before, ADA's definition of "disability" includes those individuals with impairments that substantially limit their major life activities, as well as those who are "being regarded as having such an impairment." 42 U.S.C § 12102(2)(C). The purpose behind this provision is to avoid situations where an individual is "rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities". 29 C.F.R. pt. 1630, App. § 1630.2(1); *Sch. Bd. of Nassau County v. Arline,* 480 U.S. 273, 287, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987); *see also, Sutton,* 527 U.S. at 489–90, 119 S.Ct. 2139; *Sullivan v. Neiman Marcus Group, Inc.,* 358 F.3d 110, 117 (1st Cir.2004) ("By protecting employees from discrimination based on their employer's mistaken impression that they are disabled, Congress recognized that 'society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.' ").

Pursuant to the Supreme Court's decision in *Sutton:*

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that

an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when in fact, the impairment is not so limiting.

*Sutton,* 527 U.S. at 489, 119 S.Ct. 2139; *Sullivan,* 358 F.3d at 117; *Bailey v. Georgia–Pacific Corp.,* 306 F.3d 1162, 1169 (1st Cir.2002); *Carroll,* 294 F.3d at 238 n. 4; *Rodríguez–García v. Junta de Directores,* 415 F.Supp.2d 42, 45 (D.P.R.2006).

▆▆ "The decisive issue in determining whether a plaintiff is disabled because his employer regarded him or her as such, is the perception of the employer with respect to the employee's alleged impairment." *Arce–Montalvo v. Hospital Buen Samaritano,* 384 F.Supp.2d 515, 519 (D.P.R.2005) (*citing Vázquez v. Salvation Army, Inc.,* 240 F.Supp.2d 150, 154 (D.P.R.2003)). Thus, "[a] plaintiff claiming that he is 'regarded' as disabled cannot merely show that his employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled within the meaning of the ADA." *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 176 (*citing Bailey,* 306 F.3d at 1169); *see also Sullivan,* 358 F.3d at 117. Furthermore, the Supreme Court has ruled that "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than one particular job." *Murphy v. UPS,* 527 U.S. 516, 523, 119 S.Ct. 2133, 144

L.Ed.2d 484 (1999); *see also* 29 CFR § 1630.2(j)(3)(I). A plaintiff must show that he was perceived as being unable to work in "either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities." *Murphy,* 527 U.S. at 523, 119 S.Ct. 2133; *Bailey,* 306 F.3d at 1170 (affirming summary judgment based on the plaintiffs failure to demonstrate that the employer regarded him as "unfit for either a class or a broad range of jobs").[9]

In the case at bar, Rivera claims that "the only explanation to the notes made to her termination letter after her superiors met with her to inform her of their decision" and the comments made by Marrero when she was discharged is that defendants regarded her as disabled. Docket No. 39, Exhibit (Opposition to Motion for Summary Judgment, page 7).

The mere fact that the employer is aware of the employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action. *Soler v. Tyco Electronics, Inc.,* 268 F.Supp.2d 97, 108 (D.P.R.2003) (*quoting Kelly v. Drexel University,* 94 F.3d 102, 109 (3rd Cir.1996)). Rivera implicitly argues that in her case, the perception caused the adverse employment action. In her deposition, Rivera recounts the following events:

Q. Okay. The commentary that you mention in the complaint is that "maintaining an oxygen tank at the office affects the image of the bank." Were you

9. As stated in *Rodríguez–García v. Junta de Directores de Cooperativa Jardines de San Ignacio,* 415 F.Supp.2d 42, 47 n. 6 (D.P.R. 2006), the First Circuit noted in *Sullivan* that "the approach to the 'regarded as' prong that the Supreme Court took in *Murphy* has been subjected to a significant amount of academic criticism," because " under the 'class of jobs' analysis it is virtually impossible for a claimant to establish a 'regarded as' claim. However, the Supreme Court has not altered the *Murphy* precedent." *See Sullivan,* 358 F.3d at 118 n. 4.

ever, prior to that time that you allege that Arlene Marrero made mention of that, been told anything as to the oxygen tank?

A. No. Sir.

Q. You mean to say that in a year and a half no one ever made mention of anything?

A. No, sir.

Q. Was it at the time of the meeting of the discharge, that you were told about the remark?

A. That was the reason I was given for the discharge. Moreover I was told, "we come with two alternatives, the first is that you resign and leave for 'disability'". And I asked, "what about the second"? And he said, "if you don't leave, I'll fire you." And I told him I preferred the second.

Docket No. 52, Exhibit 1 (Rivera's depo., page 59, line 20 to page 60, line 15); *see also Id.,* page 58, lines 9 through 11, and page 61, lines 12 through 17.

A reading of the complaint reveals that Rivera fails to specifically allege that defendants regarded her as disabled as required by the ADA. Although the complaint alleges that defendants knew that Rivera was asthmatic and that she was required to maintain an oxygen tank nearby to help her breathe better when she was short of breath, said allegations are insufficient to state a claim that defendants regarded Rivera as disabled as a result of her asthma. *See Saunders v. Baltimore County, Md.,* 163 F.Supp.2d 564 (D.Md. 2001) (finding plaintiff alleged only that employer was aware of his asthma, and not that employer perceived plaintiff as disabled as a result of his asthma). The first time that Rivera specifically alleged that defendants regarded her as disabled was in the opposition to the request for summary judgment. Docket No. 39, Exhibit (Opposition to Motion for Summary Judg-

ment, page 7). Having Rivera failed to make this allegation in the complaint, she can not maintain her claim that she was perceived as disabled by the defendants. *Id.; see also Medlock v. City of St. Charles,* 89 F.Supp.2d 1079, 1082 (E.D.Mo. 2000) (finding that plaintiff could not proceed in her ADA suit under a theory that she was regarded as being disabled, since her complaint did not state that the employer perceived the plaintiff as having a substantially limiting impairment); *Lee v. Southeastern Pennsylvania Transp. Authority,* 418 F.Supp.2d 675, 679–680 (E.D.Pa.2005) (plaintiff was granted leave to re-plead claims under ADA where complaint did not adequately allege an actual impairment and contained no allegations suggesting that the plaintiff was regarded as disabled and therefore, did not entitle plaintiff to such an inference); *Dean v. Westchester County P.R.C.,* 309 F.Supp.2d 587, 595–96 (S.D.N.Y.2004) (the complaint and its amendments, read together, failed to allege sufficient facts to show that the plaintiff had a record of an impairment that substantially limited his ability to perform a major life activity, or that he was regarded as having such an impairment).

Moreover, even if the court were to consider Rivera's claims that, due to her asthma, defendants regarded her as impaired in her ability to breath and/or work, said claims would still fail to survive defendant's request for summary judgment. Even if it is true that Rivera was limited in the major life activity of breathing and that this limitation impaired her ability to work, and even if defendants did in fact consider Rivera to be disabled for her particular job as Branch Manager of the Plaza Escorial branch of SBPR, Rivera still fails to present any evidence that defendants regarded her as disabled with respect to "either a class of jobs or a broad range of jobs in various classes as com-

pared with the average person having comparable training, skills, and abilities." *See Murphy,* 527 U.S. at 523, 119 S.Ct. 2133; *Bailey,* 306 F.3d at 1170. In the absence of such evidence, the court determines that as a matter of law Rivera cannot succeed in her claim that she is disabled under the ADA because defendants regarded her as such.

Therefore, insofar Rivera does not present sufficient evidence to create a material issue of fact as to the threshold determination regarding Rivera's status of "disabled" within the meaning of the ADA (either under the "regarded as" provision of said statute or under the substantial limitation of a major life activity provision), the court concludes that Rivera can not maintain her ADA claims of disability discrimination against defendants. *See Lessard,* 175 F.3d at 197; *Velez,* 389 F.Supp.2d at 263.

### IV. CONCLUSION

In view of the foregoing, it is recommended that defendants' motion for summary judgment (Docket No. 22) be GRANTED.

IT IS SO RECOMMENDED.

The parties have **ten business days** to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986).

Jan. 9, 2008.